JOHN T. MULLAN (SBN: 221149)
Email: jtm@rezlaw.com
CHAYA M. MANDELBAUM (SBN: 239084)
Email: cmm@rezlaw.com
MICHELLE G. LEE (SBN: 266167)
Email: mgl@rezlaw.com
ERIN M. PULASKI (SBN: 270998)
Email: emp@rezlaw.com
**RUDY, EXELROD, ZIEFF & LOWE, L.L.P.**
351 California Street, Suite 700
San Francisco, CA  94104
Telephone: (415) 434-9800
Facsimile:  (415) 434-0513

JAY T. JAMBECK (SBN: 226018)
Email: jjambeck@leighlawgroup.com
MANDY G. LEIGH (SBN: 225748)
Email: mleigh@leighlawgroup.com
**LEIGH LAW GROUP**
870 Market Street, Suite 1157
San Francisco, CA  94102
Telephone: (415) 399-9155
Facsimile:  (415) 795-3733

Attorneys for Plaintiff KEVIN WOODRUFF
and class of those similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN WOODRUFF, on behalf of himself and classes of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BROADSPECTRUM DOWNSTREAM SERVICES, INC., formerly TIMEC COMPANY, INC., a corporation,<br><br>Defendant. | Case No. 3:14-CV-04105-EMC<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR SETTLEMENT CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   December 15, 2016<br>Time:  1:30 p.m.<br>Place:  Courtroom 5, 17th Floor<br>Judge: Honorable Edward M. Chen<br><br>Second Amended Complaint Filed: May 3, 2016<br>Trial Date:    None Set |

## NOTICE OF MOTION AND MOTION

TO DEFENDANT BROADSPECTRUM DOWNSTREAM SERVICES, INC., formerly TIMEC COMPANY, INC. AND ITS COUNSEL OF RECORD AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on December 15, 2016, at 1:30 p.m., in Courtroom 5 on the 17th floor of this Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Kevin Woodruff will move and hereby moves the Court for an order granting the following relief:

(1)    Conditionally certifying the proposed settlement class under Federal Rule of Civil Procedure 23 (Rule 23);

(2)    Certifying Plaintiff, Kevin Woodruff, as the class representative of the conditionally-certified class pursuant to Rule 23;

(3)    Appointing Plaintiff's attorneys as Class Counsel for the conditionally-certified class, pursuant to Rule 23(g);

(4)    Preliminarily approving the proposed class action settlement as fair, reasonable, and adequate, pursuant to Rule 23(e);

(5)    Preliminarily granting Plaintiff's application for an award of a service payment pursuant to applicable legal authorities permitting courts to make such awards where they are fair and reasonable;

(6)    Setting a final fairness hearing for May 18, 2017, or the earliest available date thereafter, to finally determine whether the proposed settlement should be approved as a fair, reasonable, and adequate settlement of the claims encompassed by the settlement and to determine whether to grant Class Counsel's motion for attorney's fees and costs;

(7)    Approving and directing notice of the action, the proposed settlement, and the fairness hearing to Class Members pursuant to Rule 23(c)(2)(B) and 23(e)(1);

(8)    Appointing Rust Consulting as the Settlement Administrator;

///

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR SETTLEMENT CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:14-CV-04105-EMC

(9)     Directing the implementation of the plan for providing notice to Class Members of the settlement terms, and setting forth the dates or deadlines for opting out and objecting, and for the parties and the settlement administrator to perform the required acts relating to the notice process as provided in the Settlement; and

(10)    Making findings of fact and stating conclusions of law in support of the foregoing.

This Motion is based on the parties' Joint Stipulation of Class Action Settlement and Release, the Memorandum of Points and Authorities, the Declaration of John T. Mullan, the Proposed Order filed herewith, the other records and pleadings filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

DATED:  November 3, 2016                     Respectfully submitted,

                                             RUDY, EXELROD, ZIEFF & LOWE, LLP
                                             LEIGH LAW GROUP


                                             By:   _/s/ John T. Mullan_____
                                                   JOHN T. MULLAN
                                                   *Attorneys for Plaintiff KEVIN WOODRUFF*
                                                   *and class of those similarly situated*

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR SETTLEMENT CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:14-CV-04105-EMC

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ................................................ 2

III.    KEY TERMS OF THE PROPOSED SETTLEMENT .................................. 4

IV.     DISCUSSION ................................................................................................. 7

        A.      General Consideration and Procedure for Approving Class Action
                Settlement. ........................................................................................... 7

        B.      The Court Should Certify the Putative Settlement Class. ................... 8

                1.      The Putative Settlement Class is Sufficiently Numerous. ........... 9

                2.      Common Questions of Law and Fact Predominate. .................... 9

                3.      Plaintiff's Claims are Typical of the Settlement Class' Claims. ... 10

                4.      Plaintiff Adequately Represents Class Members' Interests. .......... 11

                5.      Class Action is a Superior Method of Adjudication. .................. 11

                6.      Plaintiff's Counsel are Qualified to be Class Counsel. ............... 12

        C.      The Court Should Preliminarily Approve the Settlement. ................. 13

                1.      The Settlement is the Product of Well-Informed, Arm's Length
                        Negotiations with No Hint of Collusion. ................................... 14

                2.      The Settlement Contains No "Obvious Deficiencies." ............... 15

                3.      The Service Payment and Attorney's Fee Requests Provided for in
                        the Settlement are Fair and Reasonable. ................................... 15

                4.      The Settlement Is Within the Range of Possible Approval. ........ 16

                        a.      The Strength of the Case and the Risk, Expense,
                                Complexity, and Likely Duration of Further Litigation. ... 16

                        b.      The Risk of Maintaining Class Status Throughout the
                                Litigation. ....................................................................... 17

                        c.      The Extent of Discovery Completed. ............................. 17

                        d.      The Experience and Views of Counsel. ......................... 17

                        e.      The Reaction of Class Members. .................................. 18

i

f.      The Settlement Provides Reasonable Compensation. ................... 18

(i)      The Settlement Provides Substantial Awards to
Class Members. .................................................. 18

(ii)     The Settlement Provides a Substantial Award to the
LWDA in Consideration for the Settlement of the
PAGA Claim. ................................................... 20

(iii)    The Court Should Approve Notice to Class
Members. ......................................................... 22

(iv)     The Court Should Set a Fairness Hearing. ........................ 23

V.      CONCLUSION ............................................................................ 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ..........................................................................................................11

*Chiaramonte v. Pitney Bowes, Inc.,*
    No. 06-1507, 2008 WL 510765 (S.D. Cal. Feb. 25, 2008) ......................................20

*Chu v. Wells Fargo Investments LLC,*
    No. 05-4526, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) (Patel, J.) ..............................17, 22

*Chun-Hoon v. McKee Foods Corp.,*
    No. 05-0620, 2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) (Walker, J.)..................................8

*Churchill Village, LLC v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ............................................................................................22

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ..........................................................................................7

*Clesceri v. City Beach Investigations & Protective Services, Inc.,*
    No. 10-3873, 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ..................................7, 18

*Cotter v. Lyft, Inc.,*
    No. 13-CV-04065, 2016 WL 3561742 (N.D. Cal. June 23, 2016) (Chhabria, J.) ..................21

*In re Drexel Burnham Lambert Group, Inc.,*
    960 F.2d 285 (2d. Cir. 1992) ............................................................................................10

*Franco v. Ruiz Food Products, Inc.,*
    No. 10-CV-02354, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ..........................................21

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005) ..........................................................................................11

*Frlekin v. Apple, Inc.,*
    309 F.R.D. 518 (N.D. Cal. 2015) (Alsup, J.) ..........................................................................10

*Garcia v. Gordon Trucking, Inc.,*
    No. 10-CV-0324, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ..........................................21

*Garner v. State Farm Mutual Auto Insurance Co.,*
    No. 08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) (Wilken, J.) ..................................7

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..........................................................................................8, 13

*Harris v. Vector Marketing Corp.*,
   No. 08-5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) (Chen, J.)..................................18

*Horton v. USAA Casualty Insurance Company*,
   266 F.R.D. 360 (D. Ariz. 2009).........................................................................13

*Misra v. Decision One Mortgage Co.*,
   No. 07-0994, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009)....................................23

*Morales v. Stevco, Inc.*,
   No. 09-00704, 2011 WL 5511767 (E.D. Cal. Nov. 10, 2011) ..........................17, 18

*Morillion v. Royal Packing Co.*,
   22 Cal.4th 575 (2000).......................................................................................9

*O'Connor v. Uber Technologies, Inc.*,
   No. 13-CV-03826, 2016 WL 4398271 (N.D. Cal. Aug. 18, 2016) (Chen, J.) .............13, 20, 21

*Officers for Justice v. The Civil Service Commission of the City*
   *and County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982).............................................................................20

*Ortega v. J.B. Hunt Transportation, Inc.*,
   258 F.R.D. 361 (C.D. Cal. 2009) .....................................................................10

*Ralston v. Mortgage Investors Group, Inc.*,
   No. 08-CV-00536, 2013 WL 5290240
   (N.D. Cal. Sept. 19, 2013) (Fogel, J.)...............................................................16

*Singer v. Becton Dickinson & Co.*,
   No. 08-821, 2010 WL 2196104 (S.D. Cal. Jun. 1, 2010).......................................15

*Stockwell v. City and County of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014)............................................................................9

*Stuart v. RadioShack Corp.*,
   No. 07-4499, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (Chen, J.) ....................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................10

*In re Wireless Facilities, Inc. Securities Litigation*,
   253 F.R.D. 630 (S.D. Cal. 2008).....................................................................8, 23

*Wright v. Linkus Enter., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009).......................................................................23

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR SETTLEMENT
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:14-CV-04105-EMC

1

**Statutes, Rules and Regulations**

2

Federal Rules of Civil Procedure
    Rule 23 ..................................................................................................*passim*
    Rule 23(a) ..................................................................................................8
    Rule 23(a)(1) ..................................................................................................9
    Rule 23(b) ..................................................................................................8
    Rule 23(b)(3) ..........................................................................................8, 9, 22
    Rule 23(c)(2)(B) ....................................................................................22, 23
    Rule 23(c)(3) ..................................................................................................22
    Rule 23(e)(2) ..................................................................................................24
    Rule 23(g) ..................................................................................................12
    Rule 23(g)(1)(A) ..................................................................................................12
    Rule 23(g)(1)(B) ..................................................................................................12
    Rule 30(b)(6) ..............................................................................................4, 14

3

4

5

6

7

8

9

California Code of Regulations, Title 8
    Section 11040(2)(K) ..................................................................................................9
    Section 11160(2)(J) ..................................................................................................9

10

11

12

California Labor Code
    Section 201 ..................................................................................................3
    Section 202 ..................................................................................................3
    Section 203 ..................................................................................................3
    Section 218.6 ..................................................................................................3
    Section 226 ..............................................................................................3, 20
    Section 226(e) ..................................................................................................6
    Section 510 ..................................................................................................3
    Section 1174 ..................................................................................................3
    Section 1194 ..................................................................................................3
    Section 1194.2 ..................................................................................................3
    Section 1197 ..................................................................................................3
    Section 2698 ..................................................................................................3
    Sections 2699 *et seq.* ..................................................................................................6
    Section 2699(e)(2) ..................................................................................................21
    Section 2699.5 ..................................................................................................3

13

14

15

16

17

18

19

20

21

California's Unfair Competition Law,
    Business and Professions Code Sections 17200, *et seq.* ..........................................................3

22

23

**Other Authorities**

24

The Federal Insurance Contributions Act ("FICA") ..................................................................4

25

The Federal Unemployment Tax Act ("FUTA") ..................................................................4

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Representative Plaintiff Kevin Woodruff brought this action on behalf of himself and similarly situated individuals against Broadspectrum Downstream Services, Inc., formerly Timec Company, Inc., ("Defendant") for violations of California wage-and-hour and unfair competition laws.[1] Following extensive discovery, full briefing on Plaintiff's motion for class certification, and several mediation sessions and discussions conducted with an experienced mediator, the parties reached a settlement.

Plaintiff now requests a court order: (1) certifying a settlement class for purpose of settling the above-captioned putative class action; (2) preliminarily approving the proposed settlement terms set forth in the parties' Stipulation of Class Action Settlement and Release ("Settlement"); (3) setting a final fairness hearing; and (4) directing notice to Class Members of the proposed Settlement and fairness hearing.

After two years of hard-fought litigation, the parties have reached a settlement that affords substantial and immediate compensation to the approximately 2,000 Class Members.  The putative class is comprised of all Field Employees (safety attendants, laborers, and helpers) employed by Defendant in California between September 20, 2010 and the date of the Court's order preliminarily approving the Settlement.

Defendant will pay a non-reversionary settlement in the amount of $3,450,000, plus the employer's share of payroll taxes.  This amount will be allocated to pay Class Members, class counsel's fees and costs, penalties pursuant to the Private Attorneys General Act of 2004 ("PAGA"), an incentive award for the class representative, and claims administrator fees.

The proposed settlement is a fair, reasonable, and non-collusive settlement.  This case presents significant legal and factual issues that have resulted in extensive discovery and negotiation.  The parties have fully briefed Federal Rule of Civil Procedure 23 class certification.

---

[1] All capitalized terms appearing in this memorandum that are not defined herein have the meanings assigned to them in the Stipulation of Class Action Settlement and Release.

1  In doing so, they have grappled with the significant issues of certifying the class and maintaining

2  class certification.  Only after two formal mediations and further arms-length negotiations were

3  the parties able to reach the proposed Settlement.

4           The Settlement is in the best interest of the class.  As addressed in more detail below,

5  there are various litigation risks that Class Counsel had to consider, including the uncertainties of

6  whether the Court would grant Plaintiff's motion for class certification and whether Plaintiff

7  would ultimately prevail in securing recovery for the class.  Pursuing this case through trial

8  would require the expenditure of substantial resources and would take a significant period of

9  time.  Accordingly, the Court should authorize notice to Class Members of the settlement terms

10  and schedule a final hearing to consider whether the settlement is fair, reasonable, and adequate.

11  **II.      FACTUAL AND PROCEDURAL HISTORY**

12           Plaintiff and putative Class Members are current and former Field Employees that

13  Defendant employed to work at refineries and other facilities in California since September 10,

14  2010.  Plaintiff's complaint alleges that Defendant's uniform practice of only paying its

15  employees for their scheduled shifts, but requiring them to work prior to the start of their

16  compensable shift to don required safety gear, obtain tools, attend safety meetings, congregate at

17  designated places, and be transported to their intra-refinery work locations, denied Class

18  Members compensation required under the California Labor Code (Second Amended Complaint,

19  Dkt. No. 46 at ¶¶14-15).  Defendant employs both permanent and temporary workers to service

20  refineries and other facilities in California (Declaration of John T. Mullan in Support of

21  Plaintiff's Unopposed Motion for Settlement Class Certification and Preliminary Approval

22  ("Mullan Dec."), ¶36).  Defendant refers to permanent refinery service employees as

23  "maintenance" Field Employees, while temporary employees brought in to service refineries on a

24  project basis are "turnaround" Field Employees (*ibid.*).

25           Plaintiffs Woodruff and Joseph Vierra initially filed this action on September 10, 2014

26  (Dkt. No. 1).  They filed a First Amended Complaint on December 2, 2014, alleging exhaustion

27  of the PAGA administrative requirements (Dkt. No. 22).  On May 3, 2016, Plaintiff Woodruff

28  filed a Second Amended Complaint to (1) remove Mr. Vierra as a named plaintiff because he

1   could not perform that role after a serious automobile accident and (2) to substitute

2   Broadspectrum Downstream Services, Inc. as the Defendant following a name change in the

3   corporate entity (*see* Dkt. Nos. 45 and 46).

4          The Second Amended Complaint states claims for failure to pay Class Members for hours

5   worked and overtime hours worked in violation of Labor Code sections 218.6, 1194, 1194.2,

6   1197, and 510, failure to provide accurate wage statements in violation of Labor Code sections

7   226 and 1174, and failure to pay waiting time penalties to Class Members in violation of Labor

8   Code sections 201, 202, and 203.  Plaintiff also sought to recover penalties under PAGA pursuant

9   to Labor Code sections 2698-2699.5.  Plaintiff also alleged that Defendant violated California's

10  unfair competition law, California Business and Professions Code sections 17200, *et seq.*, by

11  failing to pay minimum wage and overtime, failing to pay all wages due upon termination of

12  employment, and failing to provide accurate wage statements in violation of the Labor Code.

13  Plaintiff sought injunctive and declaratory relief; damages, including unpaid wages due for all

14  regular and overtime work required, suffered, or permitted by Defendant; penalties; restitution,

15  including unpaid wages due for all regular and overtime work required, suffered, or permitted by

16  Defendant; pre-judgment and post-judgment interest; and reasonable attorney's fees, costs, and

17  expenses of this action.

18         Plaintiff's counsel conducted detailed factual and legal investigations into these claims.

19  Pursuant to a court-sanctioned *Belaire* opt-out notice process, Plaintiff received a class list

20  consisting of current and former employees (Mullan Dec., ¶25).  The Parties exchanged

21  mediation-targeted discovery (*id.*, at ¶22).  Plaintiff's counsel also conducted an investigation,

22  interviewing approximately 50 putative class members (*id.*, at ¶21).  The parties attended a

23  mediation before highly-regarded and experienced mediator Jeffrey Ross in September 2015 (*id.*,

24  at ¶¶28-29).  Defendant then produced certain policy documents and information regarding a

25  number of Field Employees' electronic gate-read data and shift times (*id.*, at ¶30).  The parties

26  participated in a second day of mediation in March 2016, which again failed to result in a

27  settlement (*ibid.*).

28  ///

1    The parties also engaged in extensive formal discovery.  Both parties propounded and

2  responded to document requests and interrogatories (*id.*, ¶22).  Plaintiff's counsel took two days

3  of depositions of Defendant pursuant to Rule 30(b)(6) and Defendant deposed Plaintiff Woodruff

4  (*id.*, at ¶23).  In connection with briefing on Plaintiff's motion for class certification, Plaintiff's

5  counsel gathered and submitted numerous putative Class Member declarations from Field

6  Employees who have worked at all 14 refineries in California, as well as a declaration from

7  proposed statistical evidence expert, Richard Drogin (*id.*, at ¶24).  Defendant also submitted over

8  twenty declarations with its opposition, including refinery workers, supervisors and other

9  personnel, and two experts.  The parties provided document production related to and deposed

10  sixteen of these declarants and deposed all three experts (*id.*, at ¶¶23-24).

11    It was only after these extensive investigations, and after Plaintiff's motion for class

12  certification was fully briefed, that the parties reached a settlement in this case (*see* Dkt. No. 69).

13  In the weeks prior to reaching a settlement in September 2016, the parties continued to engage in

14  intensive mediation discussions through Mediator Ross (Mullan Dec., ¶31).  At the time of the

15  settlement, the parties were fully familiar with the facts and law, and the strengths and

16  weaknesses of the class claims (*id.*, at ¶32).  After lengthy negotiations, the parties reached an

17  agreement in principle.  Counsel then spent substantial additional time ironing out the details of

18  the Settlement (*id.*, at ¶33).

19  **III.    <u>KEY TERMS OF THE PROPOSED SETTLEMENT</u>**

20    **<u>$3,450,000 Non-Reversionary Settlement Fund</u>**.  Defendant will make a non-

21  reversionary payment of $3,450,000 to settle all claims raised in the above-captioned case.  In

22  addition to this amount, Defendant will also pay the employer's share of state and federal payroll

23  taxes (*e.g.*, FICA, FUTA) on all amounts paid to Class Members for unpaid wages (Mullan Dec.,

24  Ex. 1 at 5).

25    The maximum amount allocated to pay Class Members, Class Counsel's fees and costs,

26  PAGA penalties, an incentive award, and Claims Administrator fees is $3,450,000, plus the

27  Employer's share of payroll taxes.  However, if the total maintenance and turnaround hours

28  ///

1  worked by Class Members exceeds 3,450,000 hours (the equivalent of 69,000 work weeks of 50

2  hours each (69,000 x 50)), then the $3,450,000 will be adjusted up proportionately (*ibid.*).

3      **Scope of the Class and Released Claims**.  The Settlement covers all Field Employees

4  who were employed by Defendant in California between September 10, 2010 and the date of the

5  Court's order preliminarily approving the settlement (*id.*, at 8).  The Class includes both

6  permanent "maintenance" Field Employees and temporary or project-based "turnaround" Field

7  Employees (*id.*, at 9).  The proposed settlement Class is the same class originally proposed in

8  Plaintiffs' Complaint and in the operative Complaint.

9      All Class Members who do not opt out will, by operation of the entry of the Judgment and

10  Final Approval of the Settlement, release Defendant from all claims alleged in the Second

11  Amended Complaint, and from any other claims that could have been brought in this action (*id.*,

12  at 3-4, 24-25).  Additionally, Class Members will release any PAGA claims based on the facts

13  and claims alleged in the Second Amended Complaint (*ibid.*).

14      **Distribution of the Net Settlement Fund to Class Members**.  Class Members will not

15  be required to submit claim forms or take any other affirmative action to receive their shares of

16  the settlement proceeds (*id.*, at 8).

17      Class Members will share in the settlement on a pro rata basis primarily based on

18  workweeks each employee worked, as described in the Settlement's plan of distribution (*id.*, at

19  11-13).  The plan of distribution was designed to provide higher recovery for claims that have

20  higher potential value in Plaintiff's Counsel's judgment (Mullan Dec., ¶37).  In short, the funds

21  shall be distributed on a workweek basis, with turnaround workweeks weighted more heavily

22  than workweeks worked in maintenance positions.  The additional consideration for turnaround

23  versus maintenance work is based on the relative strengths of the claims and counsel's view that

24  obtaining and maintaining class certification for certain of the claims at issue would be less risky

25  for turnaround workers as compared to maintenance workers (*ibid.*).  Accordingly, the Plan of

26  Distribution assigns a slightly lower value to each maintenance pay period than it does to each

27  turnaround pay period (0.75 points for each maintenance workweek versus 1 point for each

28  turnaround workweek), because, in Class Counsel's view following extensive discovery, claims

1  premised on maintenance workweeks carry more risk both in terms of the merits of the claims

2  and in terms of their suitability for class treatment (*ibid.*).  Additionally, workweeks for payroll

3  periods ending on or after September 10, 2013 are weighted more heavily to account for Labor

4  Code Section 226(e) penalties for pay stub violations (up to a maximum of 39 pay periods), given

5  the one-year statute of limitations period and the statutory cap on such penalties that would

6  generally be reached after 39 workweeks (*ibid.*).  The allocation to PAGA is $200,000, if

7  approved by the Court, of which a per capita share of $50,000 will be allocated to each Class

8  Members who worked during the PAGA penalty period, with the remaining $150,000 to go to the

9  California Labor and Workforce Development Agency ("LWDA") as required by statute (Mullan

10  Dec., Ex. 1 at 5, 15-16).  Cal. Labor Code, §§ 2699 *et seq.*

11      Although each Class Member's proportionate share of the Net Settlement Fund will

12  depend on the individual's specific work history, it is estimated that the average recovery will be

13  at a minimum of nearly $1,100 (Mullan Dec., ¶42).[2]

14      **Settlement Administrator.**  The costs of the Settlement Administrator shall be paid from

15  the Settlement Fund in an amount estimated at $25,000 (Mullan Dec., Ex. 1 at 6).  The parties

16  propose that Rust Consulting act as the Claim Administrator (*id*., at 16).

17      **Attorney's Fees and Costs.**  Class Counsel may apply to the Court for an award of

18  reasonable attorney's fees in an amount up to 30% of the settlement fund or $1,035,000 (*id.* at

19  15).[3]  Class Counsel will also apply for reimbursement of their costs of up to $60,000 (*ibid*.).

20  Fees and costs awarded by the Court will be paid to Class Counsel from the settlement fund

21  (*ibid*.).  Class Counsel will file a motion for attorney's fees and costs within 21 days after the

22  Court grants Preliminary Approval of the Settlement (*id.*, at 22).

23  _____

24      [2]  This estimate is based on a projected amount to be distributed to Class Members of
approximately $2,170,000 and a class size of 2,000.  However, because Class Counsel will likely

25  seek less than 30% of the Net Settlement Fund in attorney's fees (*infra*, note 3), the average
recovery will likely increase.

26      [3]  Class Counsel intend to seek their reasonable lodestar at the time they file their motion

27  for attorney's fees, which at this time they expect to be less than 30% of the settlement fund.
Under no circumstances will Class Counsel seek more than 30% of the settlement fund.

28

1    **Service Payments.**  Plaintiff may apply to the Court for a service award not to exceed

2    $10,000 in recognition of his services on behalf of Class Members (*id.*, at 14).

3    **Payment to the LWDA.**  The Settlement provides for an amount of $200,000 to settle

4    Class Members' PAGA claims (*id.* at 15-16).  Of the PAGA amount, 75% will be paid to the

5    LWDA and 25% will be distributed to Class Members who worked within the PAGA penalty

6    period (*ibid.*).

7    **Additional Terms.**  The Settlement provides that settlement checks may be cashed within

8    180 calendar days of mailing (*id.*, at 13).  After that period, the total amount of wages represented

9    by the uncashed checks will revert to the California Secretary of State Unclaimed Property Fund

10   so that these Class Members may later claim the funds (*ibid.*).  The non-wage portion will go to

11   the Court-approved *cy pres*, which Plaintiff proposes should be the Legal Aid Society of San

12   Francisco, Employment Law Center (*ibid.*).

13   If more than four percent of Class Members (estimated at 80 employees) opt out of this

14   Settlement, Defendant has the right to rescind the Settlement (*id.*, at 21-22, 30).

15   **IV.   DISCUSSION**

16   **A.   General Consideration and Procedure for Approving Class Action Settlement.**

17   It is well settled in this circuit and nationwide that "[j]udicial policy favors settlement of

18   class actions, as substantial resources can be saved by avoiding the time, cost, and rigors of

19   formal litigation." *Clesceri v. City Beach Investigations & Protective Servs., Inc.*, No. 10-3873,

20   2011 WL 320998 at *7 (C.D. Cal. Jan. 27, 2011); *see also, Class Plaintiffs v. City of Seattle*, 955

21   F.2d 1268, 1276 (9th Cir. 1992) (noting "the strong judicial policy that favors settlements,

22   particularly where complex class action litigation is concerned"); *Garner v. State Farm Mut.*

23   *Auto Ins. Co.*, No. 08-1365, 2010 WL 1687832 at *8-9 (N.D. Cal. Apr. 22, 2010) (Wilken, J.)

24   (discussing this Circuit's long history of deferring "to the private consensual decision of the

25   parties" and declining to "second-guess" settlement terms).

26   The procedure for deciding whether to approve a proposed class action settlement is a

27   two-step process involving a preliminary approval and a final fairness hearing.  At the

28   preliminary approval stage, if the case has not already been certified as a class action, "[t]he

7

1  judge should make a preliminary determination that the proposed class satisfies the criteria set

2  out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  Federal Judicial Center,

3  Manual for Complex Litigation § 21.632 (4th ed. 2004); *see In re Wireless Facilities, Inc. Sec. Sec.*

4  *Litig.*, 253 F.R.D. 630, 634 (S.D. Cal. 2008).

5        Under Rule 23(a), a class action is permissible where the class is so numerous that joinder

6  of all members is impracticable, there are questions of law or fact common to the class, the

7  claims of the representative parties are typical of the claims of the class, and the representative

8  parties will fairly and adequately protect the class's interests.  For purposes of settlement,

9  Plaintiff seeks certification under Rule 23(b)(3).  Under that Rule, provided that Rule 23(a) is

10  satisfied, a class action may be maintained if the court finds that questions of law or fact common

11  to the class predominate over any questions affecting only individual members, and that a class

12  action is superior to other available methods for fairly and efficiently adjudicating the

13  controversy.

14        If a settlement class is certified, the court then determines whether the settlement appears

15  capable of being approved after the final fairness hearing – *i.e.*, that there are no factors appearing

16  that would make the settlement other than fair, reasonable, and adequate.  *See, e.g.*, *Hanlon v.*

17  *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Chun-Hoon v. McKee Foods Corp.*, No.

18  05-0620, 2009 WL 3349549, *2 (N.D. Cal. Oct. 15, 2009) (Walker, J.).  Assuming the court

19  makes both of these determinations, "[t]he court then approves the form and manner of notice [to

20  the class] and sets a final fairness hearing, where it will make a final determination on the

21  fairness of the class settlement."  *In re Wireless Facilities*, 253 F.R.D. at 634.

22        **B.    The Court Should Certify the Putative Settlement Class.**

23        A Rule 23(b)(3) settlement class is appropriate "whenever the actual interests of the

24  parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at

25  1022.  Plaintiff seeks certification of a settlement class comprised of all Field Employees

26  employed by Defendant in California between September 20, 2010 and the date the Court

27  preliminarily approves the settlement.  The putative settlement class meets all of the requirements

28  for maintaining a class action for settlement purposes.

8

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR SETTLEMENT
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:14-CV-04105-EMC

1          **1.     The Putative Settlement Class is Sufficiently Numerous.**

2          Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be

3   "impracticable."  Class Members' identities can be determined from Defendant's employment

4   records.  The numerosity requirement is satisfied here because the parties have identified no less

5   than 1,845 putative Class Members through the *Belaire* opt-out process (Mullan Dec., ¶25).

6          **2.     Common Questions of Law and Fact Predominate.**

7          The requirements of Rule 23(b)(3) are satisfied because questions of law and fact

8   common to the putative class predominate over any questions affecting only individual members.

9   Plaintiff contends, and Defendant does not dispute for purposes of settlement, that there are

10  questions of law or fact common to the putative settlement class.  Plaintiff contends that

11  Defendant had a uniform policy not to compensate Field Employees for the time they spent

12  traveling between the refinery security checkpoint and the worksite, donning required specialized

13  attire, and engaging in other tasks at the start of each workday prior to their scheduled shift start

14  times (Dkt. No. 46, ¶¶14-15).  The core common question is whether the time putative Class

15  Members spent performing these tasks, before their scheduled shift start times, is compensable

16  under the Labor Code, wage orders of the Industrial Welfare Commission,[4] and unfair

17  competition law.  Whether time is compensable is determined by the level of control exerted by

18  the employer over the employee.  *See Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 586

19  (2000).  Plaintiff contends that, beginning with the required security checkpoint procedure,

20  putative Class Members were sufficiently under Defendant's control to warrant compensation.

21  Class certification is appropriate where, as here, there is a common contention, the determination

22  of which will resolve "an issue that is central to the validity of each one of the [class's] claims in

23  one stroke."  *Stockwell v. City & Cnty. of S.F.*, 749 F.3d 1107, 1112 (9th Cir. 2014) ("[A]

24  common contention need not be one that will be answered, on the merits, in favor of the class.

25  _____

26      [4]  The wage orders define "hours worked" as "the time during which an employee is
   subject to the control of an employer, and includes all the time the employee is suffered or
27  permitted to work, whether or not required to do so."  *See, e.g.,* Cal. Code Regs. tit. 8,
   §§ 11040(2)(K) and 11160(2)(J).

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR SETTLEMENT
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:14-CV-04105-EMC

1   Instead, it only must be of such a nature that it is capable of classwide resolution") (internal

2   quotation marks, citations, and emphasis omitted); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

3   338, 349-50 (2011).  Class actions are routinely certified where, as here, liability turns on the

4   "conduct of the defendants rather than on the behavior of the individual class members."  *Ortega*

5   *v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 367 (C.D. Cal. 2009) (certifying minimum wage and

6   break claims of piece rate drivers, where the key legal question was whether the defendant's

7   time-tracking and compensation systems, and the absence of pay specifically allocated for break

8   periods were consistent with California law); *see also, Frlekin v. Apple, Inc.,* 309 F.R.D. 518

9   (N.D. Cal. 2015) (Alsup, J.) (certifying the California unpaid wages claims of 12,400 Apple retail

10  non-exempt employees who were not compensated for time spent undergoing security checks).

11          Here, common questions of law and fact predominate.  The central question of the

12  compensability of the preliminary activities applies to every Field Employee who was required to

13  go through a refinery security checkpoint prior to starting his or her workday; in other words, it

14  applies to every putative Class Member.  If approved, the proposed Settlement will resolve

15  Defendant's liability for its uniform compensation policy through a single agreement benefiting

16  all Class Members, which is precisely the efficiency Rule 23 is designed to achieve.

17                   **3.**      **Plaintiff's Claims are Typical of the Settlement Class' Claims.**

18          Typicality is demonstrated when "each class member's claim arises from the same course

19  of events, and each class member makes similar legal arguments to prove the defendant's

20  liability."  *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d. Cir. 1992).  Plaintiff

21  contends, and Defendant does not dispute for purposes of settlement, that Plaintiff's claims are

22  typical of Class Members' claims, in that his claims arise from the same course of conduct and

23  are based on the same legal theories as the class claims.  Plaintiff is an employee of Defendant,

24  who worked during the class period at various refineries in California (Dkt. No. 46, ¶¶6-11).  As

25  a result of Defendant's uniform policies, Plaintiff was not compensated for time spent performing

26  the tasks required of and performed by Class Members outside their scheduled shift times.  Thus,

27  his claims are coextensive with those of the proposed settlement class, and he shares a common

28  interest in seeking remuneration for this uncompensated work.

4.    **Plaintiff Adequately Represents Class Members' Interests.**

The adequacy requirement is met where the representative: (1) has common, and not antagonistic, interests with unnamed members of the class, and (2) will vigorously prosecute the interests of the class through qualified counsel. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

Plaintiff fairly and adequately represents Class Members' interests. He has the same types of interests and has suffered the same types of injuries as the unnamed Class Members. He does not have any conflicts with them. Plaintiff has diligently prosecuted this matter through experienced counsel (Mullan Dec., ¶¶3-34; Declaration of Jay Jambeck ("Jambeck Dec."), ¶¶3-11). *See infra*, Part IV(B)(6). Plaintiff has actively participated in this case, including providing Plaintiff's counsel with information and relevant documents, submitting a declaration, appearing for his deposition, and responding to Defendant's discovery requests (Mullan Dec., ¶38). *See infra*, Part IV(C)(3).

5.    **Class Action is a Superior Method of Adjudication.**

In light of the Settlement, the Court need not consider any trial manageability issues that might otherwise bear on the propriety of class certification. *See, e.g., Amchem Prods., Inc.*, 521 U.S. at 620. Nevertheless, Plaintiff contends that a class-wide settlement is a superior method of resolving the claims because there is no indication that Class Members seek to individually control their cases, that individual litigation is pending in other forums, or that this particular forum is undesirable for any reason. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183-84 (W.D.N.Y. 2005). Additionally, Class Members may lack the resources to secure experienced and qualified representation or to see litigation through to completion. Class adjudication is also clearly superior to the alternatives: (1) roughly two thousand individual lawsuits on common issues, which would be time-consuming, inefficient, and create a risk of conflicting decisions; or (2) the failure of Class Members to obtain any relief through litigation because the value of their individual claims would not justify the expense of litigation.

Furthermore, Plaintiff is aware of a prior lawsuit against Defendant alleging wage and hour violations, *Strickland v. Timec Company, Inc., et al.*, Case No. CGC 10-501832 (Mullan

Dec., ¶39 and Ex. 2).  *Strickland* alleged, *inter alia*, that Defendant failed to compensate hourly non-exempt refinery workers for all hours worked by requiring off-the-clock, uncompensated work and failing to provide meal and rest periods in accordance with state law (*ibid.*). [5]  There, the San Francisco County Superior Court approved a $6.4 million class action settlement for a class of 9,161 employees, resulting in an average recovery of $696 for each *Strickland* class member (*id.*, at ¶40). [6]  The previous settlement of similar wage and hour claims brought against Defendant in *Strickland* demonstrates the practicality of a class-wide settlement of this action.

### 6.    Plaintiff's Counsel are Qualified to be Class Counsel.

A court that certifies a class must appoint class counsel. Fed. R. Civ. P. 23(g).  In appointing class counsel, the court must consider the following: (1) the work counsel has done in investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).  The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class's interests. Fed. R. Civ. P. 23(g)(1)(B).

Plaintiff's counsel are the law firms of Rudy, Exelrod, Zieff & Lowe, LLP and the Leigh Law Group (Mullan Dec., ¶21).  The lead attorneys, John T. Mullan and Jay T. Jambeck, have extensive experience handling class actions and claims based on wage and hour violations, and unfair business practices (*id.*, at ¶¶3-20; Jambeck Dec., ¶¶3-6).  Counsel have performed extensive work to date identifying and investigating the potential claims in this action.  They

---

[5]  The *Strickland* settlement encompassed "[a]ll hourly non-exempt construction and safety employees of Defendants Timec Company, Inc., Transfield Services, Ltd., and Welltech National Training Systems, Inc. who have worked on any project at a job site located within the State of California at any time from July 30, 2004, through the date preliminary approval of the settlement is granted" (Mullan Dec., ¶40).  The complaint alleged claims on behalf of employees in job positions not at issue in the current case, such as pipefitters, welders, boilermakers, electricians, crane operators, asbestos workers, ironworkers, and quality assurance personnel (*ibid.*).

[6]  The *Strickland* case was settled without any admission of liability by the defendants (Mullan Dec., Ex. 2, ¶8).

1  have committed and will continue to commit adequate resources to represent the class (Mullan

2  Dec., ¶¶21-34; Jambeck Dec., ¶¶7-11).

3        For the foregoing reasons, the Court should, for settlement purposes, certify the case as a

4  class action on behalf of the putative settlement class, certify Plaintiff as the class representative,

5  appoint Plaintiff's counsel as Class Counsel, and appoint John T. Mullan and the law firm of

6  Rudy, Exelrod, Zieff, & Lowe, LLP as lead class counsel.

7        **C.    The Court Should Preliminarily Approve the Settlement.**

8        Before approving a Rule 23 settlement, courts must determine that the "proposed

9  settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026.  Courts

10 employ a "two-step process for the approval of class action settlements: the Court first

11 determines whether class action settlement deserves preliminary approval and then, after notice is

12 given to class members, whether final approval is warranted." *O'Connor v. Uber Techs., Inc.*,

13 No. 13-CV-03826, 2016 WL 4398271, at *8 (N.D. Cal. Aug. 18, 2016) (Chen, J.).

14       At the preliminary stage, courts "consider whether the proposed settlement appears to be

15 the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not

16 improperly grant preferential treatment to class representatives or segments of the class and falls

17 within the range of possible approval." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D.

18 Ariz. 2009) (internal quotes and citations omitted).  When addressing whether the settlement is

19 within the range of possible approval, courts may assess – to the extent possible at the

20 preliminary approval stage – the factors that will go into a final fairness determination: (1) the

21 strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

22 litigation; (3) the risk of maintaining class status throughout the litigation and trial; (4) the extent

23 of discovery completed and the stage of the proceedings; (5) the experience and views of

24 counsel; (6) the reaction of the class members; and (7) the amount of the settlement. *See*, *e.g.*,

25 *O'Connor*, 2016 WL 4398271, at *9-16 (applying at the preliminary approval stage the factors

26 described in *Hanlon*, 150 F.3d at 1026).

27 ///

28 ///

1

### 1.    The Settlement is the Product of Well-Informed, Arm's Length Negotiations with No Hint of Collusion.

2    The proposed Settlement was reached only after years of litigation, comprehensive

3    discovery, and the complete briefing of Plaintiff's motion for class certification, in which the

4    parties put forth their best legal and factual claims.  The parties participated in two full-day

5    mediations before an experienced mediator, and negotiated aggressively and at arm's length over

6    the settlement terms (Mullan Dec., ¶30).  Defendant has contended throughout this litigation, and

7    continues to contend, that it has fully complied with the law and is vigorously contesting liability.

8    After the formal mediation concluded, the parties continued to engage in negotiations

9    through the mediator (*id.*, ¶31).  Once the parties reached an agreement in principle, the parties

10    continued to engage in negotiations to specify the full terms and conditions of the proposed

11    Settlement (*id.*, at ¶33).

12    These negotiations were informed by extensive discovery.  The parties conducted detailed

13    factual and legal investigations into Plaintiff's claims.  Plaintiff's counsel conducted extensive

14    interviews of many putative class members (*id.*, ¶21).  The parties engaged in informal and

15    formal discovery, with both sides propounding and responding to document requests and

16    interrogatories.  Plaintiff's counsel has reviewed over 8,000 pages of documents produced by

17    Defendant (*id.*, at ¶22).  Additionally, Plaintiff's counsel conducted Rule 30(b)(6) depositions of

18    Defendant, and Plaintiff was deposed (*id.*, at ¶23).  In the course of briefing class certification,

19    Plaintiff interviewed and obtained declarations from numerous class members.  Defendant also

20    submitted declarations from Field Employees and other employees at Timec's facilities.  The

21    parties deposed sixteen of these declarants (*id.*, at ¶24).  In addition, both parties submitted

22    declarations from various experts, all three of whom were thereafter deposed (*id.*, at ¶23).  It was

23    only after fully researching the legal claims and investigating the facts that the parties agreed to

24    settle (*id.*, at ¶32).

25    Furthermore, Plaintiff's counsel consulted with a forensic accountant who analyzed the

26    payroll records provided by Defendant to estimate the number of workweeks at issue and identify

27    the projected class-wide recovery.  Plaintiff's counsel relied on this data in assessing Defendant's

28    potential exposure for damages, penalties, and restitution (*id.*, ¶26).

14

**2.    The Settlement Contains No "Obvious Deficiencies."**

The Settlement does not grant preferential treatment to Plaintiff, who will share in the settlement fund on the same terms as all other Class Members.  Plaintiff's application for a service payment, discussed below, is proper under the law; nor is the settlement conditioned on approval of the application.  As discussed below, *infra*, Part IV(C)(4)(f)(i), the settlement amount provides for substantial economic recovery by Class Members and the plan of distribution carefully takes into account the litigation risks of various Class Members and the applicable statutes of limitations on the various claims at issue.

**3.    The Service Payment and Attorney's Fee Requests Provided for in the Settlement are Fair and Reasonable.**

Before the final fairness hearing, Class Counsel will apply to the Court for a service payment to Plaintiff and attorney's fees and costs.  The settlement does depend on the Court's approval of the proposed amounts.  However, the amounts provided for by the Settlement are fair and reasonable, and certainly do not constitute the type of "obvious deficiency" that would prevent preliminary approval and notice to Class Members.

The maximum attorney's fee provided for by the Settlement (30% of the settlement fund) is well within the norm of fees approved in similar cases (Mullan Dec., Ex. 1 at 15).  *See, e.g., Stuart v. RadioShack Corp.*, No. 07-4499, 2010 WL 3155645 at *6 (N.D. Cal. Aug. 9, 2010) (Chen, J.) (awarding one-third of settlement fund in a wage and hour case); *Singer v. Becton Dickinson & Co.*, No. 08-821, 2010 WL 2196104 at *8-9 (S.D. Cal. Jun. 1, 2010) (33.33% of wage and hour settlement "falls within the typical range . . . in similar cases"; citing awards of 33.33%-40%).[7]  Class Counsel will also have the opportunity to seek reimbursement of their litigation costs, not to exceed $60,000 – a reasonable and modest sum given the extensive litigation spanning two years (Mullan Dec., Ex. 1 at 15).  Counsel will file a motion for

---

[7]  However, as noted above (*supra*, note 3), Class Counsel intends to seek their reasonable lodestar at the time they file their motion for attorney's fees, which at this time they expect to be less than 30% of the settlement fund.  Regardless of their actual lodestar, Class Counsel will under no circumstances seek more than 30% of the settlement fund.

1   attorney's fees and costs detailing the time spent litigating this case and the costs actually and

2   reasonably incurred.

3          A service payment in the amount of $10,000 to Plaintiff is also legally and factually

4   justifiable.  It recognizes the time and effort Plaintiff expended on behalf of Class Members and

5   the risks he incurred during the course of this litigation.  In addition to regularly providing

6   support to Plaintiff's counsel, he responded to discovery requests, reviewed the allegations in the

7   complaints for accuracy, prepared for his deposition, and was deposed (Mullan Dec., ¶38).  He

8   also served as the sole class representative when Mr. Vierra withdrew after his accident (*ibid*.).[8]

9          A payment of $10,000 is within the range of regularly approved service payments.  *See*

10  *Ralston v. Mortgage Inv'rs Grp., Inc.*, No. 08-CV-00536, 2013 WL 5290240, at *6 (N.D. Cal.

11  Sept. 19, 2013) (Fogel, J.) (granting a service payment in the amount of $12,500); *see also*

12  Mullan Dec., ¶¶5-18 and the cases therein.  Here, the maximum service payment represents a

13  small fraction of the total monetary relief and is more than justified to compensate Plaintiff for

14  his efforts on behalf of Class Members.

15              **4.**     **The Settlement Is Within the Range of Possible Approval.**

16                  **a.**     **The Strength of the Case and the Risk, Expense, Complexity,
                          and Likely Duration of Further Litigation.**

17          While Plaintiff maintains the merit of the claims, he is cognizant that this action faces

18  significant procedural, liability, and damages risks and uncertainty moving forward.  These

19  include, but are not limited to:  the risk that the Court will not certify the putative class for some

20  or all of the claims; the risk that the Court will certify only part of the class, excluding some Field

21  Employees; and the risk that Plaintiff will not prevail on his legal theory that some or all of the

22  time Field Employees spent performing uncompensated tasks before and after their schedule a

23  shift times is compensable (Mullan Dec., ¶45).

24          In addition to the risks of litigating the merits, further litigation is likely to be protracted

25  and expensive.  The parties would contest disputed procedural and substantive issues (*ibid.*).  Had

26

27          [8]  Mr. Woodruff will file a declaration with Plaintiff's motion for final approval of the
    settlement detailing his contributions to this class action litigation.

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR SETTLEMENT
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:14-CV-04105-EMC

1   the parties not reached a settlement, they would have proceeded with arguing the motion for class

2   certification and filing motions for summary judgment.  Were Plaintiff successful in his effort to

3   certify the class and to defeat summary judgment, an extensive trial on the merits would be

4   required.  In contrast, the Settlement provides a substantial and immediate benefit to Class

5   Members, which is "preferable to lengthy and expensive litigation with uncertain results."

6   *Morales v. Stevco, Inc.*, No. 09-00704, 2011 WL 5511767 at *10 (E.D. Cal. Nov. 10, 2011).

7                    **b.      The Risk of Maintaining Class Status Throughout the
                                  Litigation.**
8

9            Defendant agreed to certification of the putative settlement class.  Absent this Settlement,

10  however, Defendant hotly contests the propriety of class treatment, as set forth in length in the

11  parties' class-certification briefing.  *See* Dkt. Nos. 48-50, 56-58, and 61-65-1.  Courts have found

12  that certification uncertainty is a factor that weighs in favor of approving a class settlement.  *See,*

13  *e.g., Chu v. Wells Fargo Invs. LLC*, No. 05-4526, 2011 WL 672645 at *4 (N.D. Cal. Feb. 16,

14  2011) (Patel, J.).

15                   **c.      The Extent of Discovery Completed.**

16           This factor considers whether the parties have gathered sufficient information to make an

17  informed decision about the settlement.  *See e.g., Morales,* 2011 WL 5511767 at *11.  Here,

18  given the extensive discovery completed, there can be no question that this factor weighs heavily

19  in favor of approval.  *See supra*, Part IV(C)(1).  Moreover, the degree to which the parties

20  understood their positions is demonstrated by the fact that the case settled after they had fully

21  briefed class certification and only after two separate mediations held months apart (Mullan Dec.,

22  ¶¶30-32).  *See, e.g., Chu*, 2011 WL 672645 at *4 (in addition to substantial discovery, "the

23  respective factual and legal strengths of the parties' arguments are likely to have been sufficiently

24  fleshed out" in the settlement process).

25                   **d.      The Experience and Views of Counsel.**

26           Plaintiff's counsel are very experienced in class litigation, particularly in wage and hour

27  cases, and have been repeatedly recognized for their zealous representation (Mullan Dec., ¶¶3-

28  20).  *See infra*, Part IV(B)(6).  Given the experience and high legal standing of counsel, their

17

1   endorsement of the settlement as fair, reasonable, and adequate in light of the risks of further

2   litigation and recommendation that it be approved "is entitled to significant weight, and weighs in

3   favor of settlement." *See e.g. Morales*, 2011 WL 5511767 at *11; *Clesceri*, 2011 WL 320998

4   at *10.

5                         **e.       The Reaction of Class Members.**

6           The reaction of Class Members cannot be assessed until notice is provided and they have

7   had an opportunity to respond to the Settlement. *See e.g. Morales*, 2011 WL 5511767 at *11;

8   *Harris v. Vector Mktg. Corp.*, No. 08-5198, 2011 WL 1627973 at *16 (N.D. Cal. Apr. 29, 2011)

9   (Chen, J.).

10                        **f.       The Settlement Provides Reasonable Compensation.**
                               **(i)      The Settlement Provides Substantial Awards to Class**
11                                         **Members.**

12          Through the $3.45 million settlement, Class Members will receive substantial awards

13  based on their length of service as Field Employees during the applicable liability period (Mullan

14  Dec., Ex. 1 at 11-13).  Class Members are not required to submit claims or take any other

15  affirmative action to receive their shares of the Settlement, which will result in a higher

16  percentage of the class receiving money than would be the case if affirmative action were

17  required (*id.*, at 8).  The anticipated individual average award will be, at a minimum, nearly

18  $1,100, which constitutes a substantial recovery for Class Members (Mullan Dec., ¶42).  The

19  awards are high in absolute terms, and they are particularly significant when viewed in the

20  context of this case.  Class Members are relatively low paid unskilled workers (*id.*, at ¶43).  Most

21  Class Members are turnaround Field Employees, who are part-time workers who are laid off at

22  the end of each project; therefore, their recovery is less than would be expected for permanent

23  employees who work fulltime all year (*ibid.*).  Plaintiff's forensic accountant estimated the

24  maximum damages in this case to be $15.5 million as of March 2, 2016, based on assuming an

25  average of 28 minutes of unpaid time per shift and assuming that Plaintiff prevails in full on each

26  of his claims, including claims where the Court has significant discretion (*id.*, at ¶26).[9]  Here, the

27  ───────────────────

28      [9]  This figure of maximum recoverable damages is subject to certain risks, including the

1   proposed settlement provides significant, and immediate, awards to the Class Members,

2   particularly in light of the risks of lengthy litigation.  *See supra*, Part IV(C)(4)(a)-(b).

3          Moreover, the estimated average settlement in this case compares favorably with similar

4   settlements.  For example, in *Strickland*, a case that involved additional claims for meal and rest

5   breaks not at issue here, the average estimated settlement was $696 (Mullan Dec., ¶40 and Ex. 3

6   [*Strickland* Notice of Motion and Motion for Final Approval of Class Action Settlement,

7   Memorandum of Points and Authorities, at 2:19-21]).[10]  Additionally, the release granted by

8   Class Members who do not opt out is limited to claims that were asserted in the Second Amended

9   Complaint and wage and hour claims that could have been brought in this action (Mullan Dec.,

10  Ex. 1 at 24-26).

11         The Settlement's distribution plan takes into account that turnaround Field Employees are

12  more likely to succeed at the class certification and liability phases than maintenance Field

13  Employees (*id.,* at 12).  Turnaround Field Employees' pre and post-shift activities were more

14  restricted than maintenance Field Employees'; therefore, the facts underlying their claims for

15  compensation for these activities are more uniform, and thus, more easily certifiable (*see* Dkt.

16  No. 62 at 2:7-14).  Additionally, it is appropriate to compensate turnaround Field Employees

17  more highly because they are more likely to have claims for waiting time penalties because they

18  worked on temporary projects and were routinely laid off when they completed a project (Mullan

19  Dec., ¶37).  Recognizing that, as a group, turnaround Field Employees are more likely to have

20

21  possibility that the trier of fact finds that the average uncompensated minutes per shift is
    significantly less than 28 minutes.  Additionally, this figure assumes that Plaintiff prevails in full
    on all claims, even those where the Court has significant discretion (such as PAGA penalties).

22
23         [10]  For illustration purposes, Class Counsel points out that the average settlement amount
    of, at a minimum, nearly $1,100 per plaintiff far exceeds the average settlement value per
    plaintiff of recent wage and hour class action settlements according to a recent study from NERA
24  Economic Consulting presented by LexisNexis. The July 14, 2015 report, entitled "Trends in
    Wage and Hour Settlements: 2015 Update", which was based on 613 wage and hour case
25  settlements during the period January 2007 through March 2015, noted that the overall average
    gross per plaintiff settlement value during the period 2007-2015 was $1,097.  However, the
26  average settlement value per plaintiff declined to $686 in 2014 and to just $353 through the first
    three months of 2015.  Available at http://www.nera.com/content/dam/nera/publications/2015/
27  PUB_Wage_and_Hour_Settlements_0715.pdf.

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR SETTLEMENT
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:14-CV-04105-EMC

1    waiting time penalties greatly reduces the administrative burden of determining the payment

2    amounts.  Otherwise, the Claims Administrator would have to go through each Class Members'

3    pay stubs to determine whether and how many times their employment was terminated during the

4    claims period.  Thus, the pro rata workweek distribution coupled with the workweek multiplier

5    constitutes a fair, objectively reasonable, and proper attempt to equitably distribute the proposed

6    settlement, which avoids the greater administrative cost of a more complicated and individualized

7    Plan of Distribution.

8           Additionally, the plan of distribution provides a workweek multiplier for Class Members

9    who worked a turnaround or maintenance pay period on or after September 10, 2013.  This

10   provides additional consideration for claims for paystub violations under Labor Code Section

11   226, which has a one-year statute of limitations period (with a statutory cap on penalties that

12   would generally be reached after 39 workweeks) (Mullan Dec., Ex. 1 at 12).

13          In sum, given the procedural, liability, and damages hurdles facing them, the total

14   settlement and corresponding pro rata awards are very favorable to Class Members.  *See, e.g.,*

15   *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624

16   (9th Cir. 1982) ("Of course, the very essence of a settlement is compromise, a yielding of

17   absolutes and an abandoning of highest hopes.") (quotation marks omitted); *Chiaramonte v.*

18   *Pitney Bowes, Inc.*, No. 06-1507, 2008 WL 510765 at *6 (S.D. Cal. Feb. 25, 2008) (noting that,

19   in wage and hour settlement, funds that are "only a fraction of the potential recovery" have been

20   approved; citing approval of 6% of recovery).  Especially given the high degree of risk and

21   uncertainty involved in further litigation, the settlement amount and projected pro rata

22   distributions represent a substantial recovery supporting preliminary approval.

23                        **(ii)      The Settlement Provides a Substantial Award to the
                                     LWDA in Consideration for the Settlement of the PAGA**
24                                   **Claim.**

25          Although courts evaluate settlements as a whole, where a settlement resolves PAGA

26   claims, they must closely evaluate both the settlement award allocated to the Rule 23 class and

27   the award allocated to the PAGA claims.  *O'Connor*, 2016 WL 4398271, at *18.  There is no

28   specific formula for determining the amount of a PAGA award.  Instead, courts compare the

1   verdict value of the PAGA award to the recovery, while keeping in mind that the court could

2   reduce the penalty when "to do otherwise would result in an award that is unjust, arbitrary and

3   oppressive, or confiscatory."  Cal. Lab. Code § 2699(e)(2).  As with the award to the Rule 23

4   class, courts must evaluate the PAGA award in light of the risks of litigating the matter.

5          Courts may apply a "sliding scale" to evaluate the adequacy of the compensation to the

6   class and the LWDA.  *O'Connor*, 2016 WL 4398271, at *18.  Where the "settlement for the Rule

7   23 class is robust," resolves important questions of law, or contains "substantial injunctive

8   relief," a lower PAGA award may be appropriate as long as the settlement as a whole

9   "substantially vindicates" PAGA's goals of protecting the rights of employees, encouraging

10  employers to comply with wage and hour laws, and supplementing the State's enforcement

11  abilities through private action.  *Ibid.*

12         Here, the amount of the PAGA award is appropriate for two reasons.  *First*, the PAGA

13  award constitutes significant relief to the Class given the risks of pursuing a jury verdict.

14  Plaintiff's forensic accountant estimated that if Class Members were successful on all counts, a

15  verdict award on the PAGA claim could reach approximately $4.8 million.  Thus, the PAGA

16  settlement value is over 4% of the possible recovery (Mullan Dec., ¶45(f)).  Moreover, this

17  percentage does not take into account the possibility that the Court has substantial discretion to

18  reduce the award to avoid an unjust result.  *Cotter v. Lyft, Inc.*, No. 13-CV-04065, 2016 WL

19  3561742, at *5 (N.D. Cal. June 23, 2016) (Chhabria, J.) (finding that a reduction of a PAGA

20  award appropriate where the company did not "deliberately evade[] a clear legal obligation to

21  provide legally required pay and benefits to its employees" or "negligently fail[] to learn about its

22  obligations under the wage and hour laws.").  Notably, the award proposed by the Settlement is

23  significantly higher than the $10,000 PAGA award provided in the $6.4 million *Strickland*

24  settlement (Mullan Dec., Ex. 2, ¶15.  And it is well within the range of typical PAGA awards

25  approved in class action settlements.  *See, e.g.*, *Cotter*, 2016 WL 3561742, at *5 (approving a $1

26  million PAGA award out of a $27 million settlement); *Franco v. Ruiz Food Prod., Inc.*, No. 10-

27  CV-02354, 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) (approving a $10,000 PAGA

28  award out of a $2.5 million settlement); *Garcia v. Gordon Trucking, Inc.*, No. 10-CV-0324, 2012

21

1   WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving a $10,000 PAGA award out of a $3.7

2   million settlement); *Chu*, 2011 WL 672645, at *1 (approving a $10,000 PAGA award out of a

3   $6.9 million settlement).  And as discussed above, there are no guarantees that the putative class

4   members would be certified as a class or prevail on all counts at trial.  *See supra*, Part

5   IV(C)(4)(a)-(b).  The settlement award takes account of the risk, expense, and delay inherent in

6   litigation.

7            *Second*, because the Settlement as a whole promotes PAGA's principles, the PAGA

8   award is appropriate.  The Settlement provides substantial relief to Class Members.  *See supra*,

9   Part IV(C)(f)(i).  Additionally, requiring Defendant to pay $3,450,000 in settlement will deter

10  future violations.  Thus, Plaintiff, by bringing this action on behalf of unnamed class members,

11  has supported the LWDA's enforcement efforts.

12                      **(iii)**     **The Court Should Approve Notice to Class Members.**

13           Rule 23(c)(2)(B) requires that absent class members receive the "best notice practical

14  under the circumstances."  For a Rule 23(b)(3) class, the notice must clearly and concisely state:

15  (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or

16  defenses; (4) that a class member may enter an appearance through an attorney if the member so

17  desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the

18  time and manner for requesting exclusion; (7) the binding effect of a class judgment on members

19  under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it generally describes

20  the terms of the settlement in sufficient detail to alert those with diverse viewpoints to investigate

21  and to come forward and be heard."  *Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 575

22  (9th Cir. 2004) (internal quotes omitted).

23           The written notice provided for by the Settlement meets the above requirements.  The

24  notice explains in plain and easily understood language what the case is about along with: the

25  class definition and claims; the settlement amount; the requested amounts to be paid to Class

26  Counsel and Plaintiff; the rights of Class Members to appear through attorneys; the rights of

27  Class Members to opt-out or object to the Settlement's terms, and the process by which they can

28  do so; the binding effect of the Settlement on those who do not request exclusion; and the

1  particulars of the final fairness hearing (Mullan Dec., Ex. A to Ex. 1).  The Parties have adopted

2  the sample Notice language from the Northern District of California's Procedural Guidance for

3  Class Action Settlements and have attempted to comply with all the provisions of the Guidance.

4      The proposed plan for directing notice to Class Members is also "the best notice that is

5  practicable under the circumstances."  Defendant will provide the Claims Administrator with the

6  last known address of Class Members.  For Class Members no longer employed by Defendant,

7  the Claims Administrator will compare the address provided by Defendant and the U.S. Postal

8  Service's National Change of Address List.  Then, the Claims Administrator will send the Class

9  Notice by first class U.S. mail to all Class Members (Mullan Dec., Ex. 1 at 17).  Further, the

10  Claims Administrator will attempt to locate Class Members whose notice is returned as

11  undeliverable and shall attempt re-mailings where new addresses are secured (*ibid.*).  The parties

12  are not aware of any additional method of distribution that would be reasonably likely to result in

13  the receipt of notice by Class Members who may otherwise not receive notice pursuant to the

14  proposed distribution plan.  For these reasons, the Settlement's plan for directing notice to Class

15  Members satisfies Rule 23(c)(2)(B).  *See, e.g.*, *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475

16  (E.D. Cal. 2009); *Misra v. Decision One Mortgage Co.*, No. 07-0994, 2009 WL 4581276, *9

17  (C.D. Cal. Apr. 13, 2009).

18           **(iv)**    **The Court Should Set a Fairness Hearing.**

19      Because the case meets the requirements for certification of a settlement class and the

20  Settlement meets the requirements for preliminary approval, the Court should preliminarily

21  approve the Settlement.  Plaintiff requests that the Court adopt the Proposed Order submitted

22  herewith approving the parties' plan for directing notice to Class Members; and setting forth the

23  dates or deadlines for Class Members to opt out or object, and for the parties and the Claims

24  Administrator to perform the required acts related to the notice process, as provided in the

25  Settlement.

26      Plaintiff also requests that the Court set a final fairness hearing to consider whether to

27  approve the Settlement, and grant Plaintiff's application for a service payment and Class

28  Counsel's motion for attorney's fees and costs.  *See In re Wireless Facilities, Inc. Sec. Litig.*, 253

23

1  F.R.D. at 634; Fed. R. Civ. P. 23(e)(2).  Plaintiff requests that the Court set the fairness hearing

2  for May 18, 2017, or the earliest available date thereafter, and order that the Motion for Judgment

3  and Final Approval be filed with the Court no later than two weeks before the fairness hearing.

4  **V.     CONCLUSION**

5          For the foregoing reasons, Plaintiff respectfully requests that the Court grant his

6  unopposed Motion in its entirety and enter the Proposed Order.

7  DATED:  November 3, 2016               Respectfully submitted,

8                                         RUDY, EXELROD, ZIEFF & LOWE, LLP

9                                         LEIGH LAW GROUP

10

11                                        By:   */s/ John T. Mullan*
                                               JOHN T. MULLAN
12                                             *Attorneys for Plaintiff KEVIN WOODRUFF*
                                               *and class of those similarly situated*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28