UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN WOODRUFF,<br><br>            Plaintiff,<br><br>      v.<br><br>BROADSPECTRUM DOWNSTREAM SERVICES INC,<br><br>            Defendant. | Case No. 14-cv-04105-EMC<br><br>**ORDER RE SUPPLEMENTAL BRIEFING**<br><br>Docket No. 73 |

The Court has reviewed Plaintiff's motion for preliminary approval. *See* Docket No. 73 (motion). Having considered that motion, the Court hereby orders that the parties file a **joint** supplemental brief addressing the following issues **within a week of the date of this order**. (As indicated below, on some issues, the Court needs only one party's briefing.)

A.   Maximum Value of the Case

Plaintiff indicates in his motion that the maximum value of the case (as of March 2016) is approximately $15.5 million. *See* Mot. at 18. Plaintiff shall address how he (and/or his expert) arrived at this figure. Plaintiff shall also give some detail as to how much money each claim was worth.

B.   Risk of Further Litigation

Although Plaintiff's motion and supporting declaration address the risk of further litigation, *see* Mot. at 16-17; Mullan Decl. ¶ 45, it would be helpful for the Court to have input from Timec as to what its views are on the possible weaknesses of Plaintiff's case. Timec shall brief what it views as weaknesses with Plaintiff's case.

C.   Scope of the Release

The release is contained in paragraph 57 of the settlement agreement. *See* Sett. Agmt. ¶ 57

1  (providing for a release of "any wage and hour causes of action . . . , including those claims
2  brought in this Action, or which wage and hours claims could have been brought"). The Court is
3  concerned that, as phrased, the release language is too broad. For example, the release does not
4  appear to be tied to wage-and-hour claims that could have been brought *based on the specific*
5  *allegations in the operative complaint*.

6  The Court also has concerns about the release because it does not map up with the
7  operative complaint. For example, the release refers to post-shift time but post-shift time (as
8  opposed to pre-shift time) does not appear to be referenced anywhere in the second amended
9  complaint ("SAC"). *See, e.g.*, SAC ¶ 15 (alleging that pre-shift time "on average amounted to
10 between 30 minutes to one hour per day"). Also, the release refers to pre-shift time not referenced
11 in the SAC (*e.g.*, attending safety meetings).

12 The Court further notes that neither the release nor the SAC refers to some pre-shift time
13 discussed in the prior motion for class certification – in particular, being searched and/or being
14 tested for drugs or alcohol.

15 The parties shall address the above issues, including but not limited to whether the SAC
16 needs to be amended and whether the settlement value needs to be adjusted if, *e.g.*, the class is
17 giving up claims based on activities not mentioned in the SAC as pled.

18 D. Class Period

19 The class period appears to be from September 10, 2010, to the date of preliminary
20 approval (if granted). The parties shall address how the *Strickland* case (which is referenced in the
21 pending motion and which was also mentioned in the prior class certification motion) affects this
22 class period and for what claims. *See, e.g.*, Sett. Agmt. ¶ 49 (discussing Plan of Distribution and
23 noting that workweeks are those from December 17, 2010 (the date of the *Strickland* settlement),
24 through the last regular payroll period before preliminary approval).

25 E. Maintenance Employees v. Turnaround Employees

26 The class includes both maintenance and turnaround employees. The Plan of Distribution
27 essentially gives more value to the claims of turnaround employees. Although the motion gives
28 some explanation as to why the claims of the maintenance employees are riskier, the Court is in

2

need of a more specific explanation. The parties shall provide such an explanation.

In addition, Plaintiff shall clarify whether he has ever been a maintenance employee. If not, then he shall address whether he is adequately positioned to represent both maintenance and turnaround employees (*e.g.*, is there a conflict between the two kinds of employees?).

F. <u>Uncashed Checks</u>

The settlement agreement indicates that the wage portion of uncashed checks will be given to the California Secretary of State Unclaimed Property Fund. The parties shall provide information as to how long such monies will be retained in that fund and how likely it is that there will be claims on that fund. The parties shall also explain why they adopted this approach rather than having the wage portion (like the nonwage portion) go to the cy pres beneficiary.

G. <u>Attorney's Fees</u>

Under the settlement agreement, Plaintiff may ask for up to 30% of the gross settlement fund for attorney's fees. Plaintiff shall address why that percentage – which exceeds the 25% benchmark identified by the Ninth Circuit – is appropriate here.

In addition, Plaintiff shall identify what the lodestar is in this case – *i.e.*, what hourly rates are at issue and what number of hours are at issue. It would be helpful for the Court to get a general sense of how much time was spent on each major litigation point (*e.g.*, drafting the complaint, taking discovery, drafting the class certification motion).

H. <u>Settlement Terms</u>

1. <u>Reminder Postcard</u>

The parties shall address whether there should be a reminder postcard for class members who have not cashed their checks, to be mailed within a certain date in advance of the date by which the checks expire.

2. <u>Unfettered Discretion</u>

The parties should address why the settlement agreement includes provisions for "unfettered discretion" by the claims administrator and class counsel. *See* Sett. Agmt. ¶ 49 (providing that a class member's challenge to workweeks identified by the parties shall be resolved by the claims administrator "in its sole and unfettered discretion"); Sett. Agmt. ¶ 52

3

1  (providing that class counsel has "sole and unfettered discretion" as to whether to reach out to
2  class members who have not cashed their checks).

3      3.    <u>Deadlines</u>

4  The deadlines proposed by the parties should be changed.

- ¶ 51. The declaration from the claims administrator should be filed five weeks prior to the final approval hearing.
- ¶ 22. The motion for final approval shall be filed five weeks prior to the hearing thereon.
- ¶ 53. Responses to objections shall be filed two weeks prior to the hearing on the final approval motion.

I.    <u>Proposed Notice</u>

    1.    <u>Page 1: "The settlement resolves lawsuits over whether Timec . . . ."</u>

The notice may need to be modified depending on how the parties address the issues identified in Part C above regarding pre-shift and post-shift time.

    2.    <u>Page 2: "OBJECT"</u>

The chart should clarify that a class member who objects stays in the lawsuit, is part of the settlement class, and is bound by the Court's rulings; the class member has not opted out.

    3.    <u>Page 2: "DO NOTHING"</u>

The chart should clarify that a class member who does nothing stays in the lawsuit, is part of the settlement class, and is bound by the Court's rulings.

    4.    <u>Page 2: "CHALLENGE YOUR WORKWEEK INFORMATION"</u>

The chart should clarify that a class member who presents a challenge stays in the lawsuit, is part of the settlement class, and is bound by the Court's rulings.

    5.    <u>Page 2: "HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM"</u>

The above statement should not refer to submitting a claim form as the settlement contemplates no claim forms.

    6.    <u>Page 5: "Terms of the Proposed Settlement"</u>

This section should identify the specific dollar value of all deductions from the gross

settlement fund (*e.g.*, attorney's fees, costs, incentive award).

    7.    <u>Page 6: "Terms of the Proposed Settlement"</u>

The description of the release is overbroad.

    8.    <u>Page 6: "Plan of Distribution"</u>

The parties should address whether language should be included regarding the impact of the *Strickland* case.

    9.    <u>Page 7: "HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM"</u>

The above statement should not refer to submitting a claim form as the settlement contemplates no claim forms.

    10.    <u>Page 9: "How will the lawyers [etc.] be paid?"</u>

This section should identify the potential specific dollar value of the attorney's fees.

    11.    <u>Page 12: "Individual Class Member's Information"</u>

This section should be in a separate document attached to the notice.

In addition, the parties should address the "unfettered discretion" issue.

J.    <u>Proposed Order (Docket No. 73-1)</u>

    1.    <u>Paragraph 2</u>

The Court is concerned about the use of the term "presumptively." *See* Prop. Order ¶ 2 ("The Settlement falls within the range of reasonableness and appears to be presumptively valid . . . .").

    2.    <u>Paragraph 11</u>

The Court has concerns about the deadlines as discussed in Part H.3, *supra*.

**IT IS SO ORDERED**.

Dated: November 15, 2016

_____
EDWARD M. CHEN
United States District Judge