JOHN T. MULLAN (SBN: 221149)
Email: jtm@rezlaw.com
CHAYA M. MANDELBAUM (SBN: 239084)
Email: cmm@rezlaw.com
MICHELLE G. LEE (SBN: 266167)
Email: mgl@rezlaw.com
ERIN M. PULASKI (SBN: 270998)
Email: emp@rezlaw.com
**RUDY, EXELROD, ZIEFF & LOWE, L.L.P.**
351 California Street, Suite 700
San Francisco, CA  94104
Telephone: (415) 434-9800
Facsimile:  (415) 434-0513

JAY T. JAMBECK (SBN: 226018)
Email: jjambeck@leighlawgroup.com
MANDY G. LEIGH (SBN: 225748)
Email: mleigh@leighlawgroup.com
**LEIGH LAW GROUP**
870 Market Street, Suite 1157
San Francisco, CA  94102
Telephone: (415) 399-9155
Facsimile:  (415) 795-3733

Attorneys for Plaintiff KEVIN WOODRUFF,
and classes of those similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN WOODRUFF, on behalf of himself and classes of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BROADSPECTRUM DOWNSTREAM SERVICES, INC., formerly TIMEC COMPANY, INC., a corporation,<br><br>Defendant. | Case No. 3:14-CV-04105-EMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br>Date:  May 4, 2017<br>Time:  1:30 p.m.<br>Place:  Courtroom 5, 17th Floor<br>Judge:  Honorable Edward M. Chen<br><br>Third Amended Complaint Filed: December 16, 2016<br>Trial Date:     None Set |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on May 4, 2017 at 1:30 p.m., pursuant to this Court's December 19, 2016 Order Granting Motion for Preliminary Approval of the $3.45 million class action settlement reached with Defendant Broadspectrum Downstream Services, Inc. (Dkt. 87), or as soon thereafter as this matter may be heard in the courtroom of the Honorable Edward M. Chen, Courtroom 5, 17th Floor, of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs will, and hereby do, move this Court to award Class Counsel $945,677.50 in attorneys' fees (approximately 27% of the settlement fund) and up to $60,000 in costs and expenses.

This motion is made on the grounds that the requested award is fair, reasonable, and appropriate under the common fund doctrine under either the percentage-of-the-fund method or the lodestar method. The requested fee award represents approximately 27% of the settlement fund, which is well within the accepted range for common fund fee requests in the Ninth Circuit. The requested amount will be considerably less than Class Counsel's lodestar through the conclusion of this action, which will likely be nearly $1,000,000 (calculated by multiplying Class Counsel's reasonable hours worked times their reasonable rates billed).

In addition, Class Counsel seek reimbursement of up to $60,000 in litigation costs and expenses they have or will incur in connection with the prosecution of this action. To date, Class Counsel has incurred $52,474.74 in litigation costs and expenses.[1] The costs and expenses for which Class Counsel seek reimbursement were reasonable and necessary to this litigation and were incurred for the benefit of the classes.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the supporting declarations of John T. Mullan and Jay T. Jambeck, filed herewith; the files and records in this matter; any reply briefs or declarations (to

---

[1] Class Counsel will submit an updated costs amount prior to the Final Approval hearing. They will seek only their actual expenses incurred as of that time, but in no event will they seek more than $60,000 in costs reimbursement.

1    be filed no later than April 20, 2017); and such argument as may be heard on this matter by the

2    Court.

3

4    DATED:  January 9, 2017                    Respectfully submitted,

5                                               RUDY, EXELROD, ZIEFF & LOWE, LLP

6                                               LEIGH LAW GROUP

7

8                                               By: _____

9                                                   JOHN T. MULLAN
                                                    *Attorneys for Plaintiff KEVIN WOODRUFF,*
                                                    *and classes of those similarly situated*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS
CASE NO. 3:14-CV-04105-EMC

## **TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.    BACKGROUND ...................................................................................................... 2

    A.     Class Counsel Devoted Substantial Time and Resources to
        Litigating This Case on a Contingency Basis, Despite the Risks
        Involved. ...................................................................................................... 2

    B.     The Settlement Obtained Is Highly Beneficial to Class
        Members. ...................................................................................................... 4

III.   ARGUMENT ........................................................................................................... 6

    A.     The $945,677.50 Class Counsel Seek in Attorneys' Fees is
        Reasonable Under Either the Percentage-of-the-Fund Method
        or the Lodestar Method. ............................................................................... 6

        1.     Class Counsel Are Entitled to an Award of Attorneys'
              Fees Because the Litigation Recovered a Certain and
              Calculable Fund for the Plaintiff Class. ..................................... 6

        2.     The Requested Fee Is Reasonable Under the
              Percentage-of-the-Fund Method. ................................................ 7

        3.     The Requested Fee Is Reasonable Under a Lodestar
              Cross-Check. ............................................................................... 9

              a.     Class Counsel's Lodestar Exceeds the Fee
                  Amount Requested, and Is Based on Reasonable
                  Hours and Rates. .......................................................... 9

              b.     The Legal Principles Behind Risk Multipliers
                  Further Support the Reasonableness of the Fee
                  Requested. ................................................................... 11

    B.     Class Counsel Are Entitled to Recover Their Reasonable
        Litigation Costs and Expenses, Which Have Inured to the
        Benefit of the Class. .................................................................................. 11

    C.     Class Members Will Have Notice and an Opportunity to Object
        to Class Counsel's Request for Attorneys' Fees and Costs. ...................... 12

IV.    CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbosa v. Cargill Meat Solutions Corp.*,
  1:11-CV-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013).........................................8

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)....................................................................................1, 7, 9

*Blum v. Stenson*,
  465 U.S. 886 (1984) ...............................................................................................7, 10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................6, 7

*Ching v. Siemens Industry, Inc.*,
  C 11-4838 MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014).........................................8

*Craft v. Cnty. of San Bernardino*,
  624 F.Supp.2d 1113 (C.D. Cal. 2008).........................................................................11

*Elliott v. Rolling Frito-Lay Sales LP*,
  2014 WL 2761316 (C.D. Cal. June 12, 2014).................................................................8

*Estrella v. Freedom Fin. Network, LLC*,
  C09-03156 SI, 2012 WL 4645012 (N.D. Cal. Oct. 1, 2012) ............................................8

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)........................................................................................11

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)....................................8

*Hester v. Vision Airlines, Inc.*,
  2014 WL 3547643 (D. Nev. July 17, 2014) ...................................................................8

*In re Immune Response Sec. Litig.*,
  497 F.Supp.2d 1166 (S.D. Cal. 2007) ........................................................................12

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010).....................................................................................12

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ...............................................................................................10

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015).................................................................................1, 6, 7

*In re Pac. Enterprises Sec. Litig.*,
　　47 F.3d 373 (9th Cir. 1995) ........................................................................1, 8

*Prison Legal News v. Schwarzenegger*,
　　608 F.3d 446 (9th Cir. 2010) ...........................................................................10

*Singer v. Becton Dickinson & Co.*,
　　2010 WL 2196104 (S.D. Cal. June 1, 2010) .....................................................8

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
　　904 F.2d 1301 (9th Cir. 1990) .......................................................................1, 7

*State of Fla. V. Dunne*,
　　915 F.2d 542 (9th Cir. 1990) .............................................................................7

*Staton v. Boeing Co.*,
　　327 F.3d 938 (9th Cir. 2003) .............................................................................7

*Stuart v. Radioshack Corp.*,
　　C07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .........................8

*Van Vranken v. Atl. Richfield Co.*,
　　901 F.Supp. 294 (N.D. Cal. 1995)....................................................................11

*Vasquez v. Coast Valley Roofing, Inc.*,
　　266 F.R.D. 482 (E.D. Cal. 2010) ......................................................................8

*Viceral v. Mistras Group, Inc.*,
　　No. 15-2198 (N.D. Cal. Oct. 11, 2016) .............................................................5

*Vincent v. Hughes Air W., Inc.*,
　　557 F.2d 759 (9th Cir. 1977) .........................................................................2, 11

*Vizcaino v. Microsoft Corp.*,
　　290 F.3d 1043 (9th Cir. 2002) .................................................................2, 8, 9, 11


**Statutes, Rules and Regulations**

Federal Rules of Civil Procedure
　　Rule 23 ............................................................................................................5, 6, 9
　　Rule 30(b)(6) ...................................................................................................4, 5, 9

29 U.S.C. § 185, Labor Management Relations Act
　　Section 301 ......................................................................................................3, 4

California Business and Professions Code § 17200. .......................................................3

iii

California Labor Code

Section 201 ...................................................................................................................3
Section 202 ...................................................................................................................3
Section 203 ...................................................................................................................3
Section 226 ...................................................................................................................3
Section 514 ...................................................................................................................3
Section 218.6 ................................................................................................................3
Section 510 ...................................................................................................................3
Section 1174 .................................................................................................................3
Section 1194 .................................................................................................................3
Section 1194.2 ..............................................................................................................3
Section 1197 .................................................................................................................3
Section 2698 .................................................................................................................3
Section 2699.5 ..............................................................................................................3

**Other Authorities**

California Industrial Welfare Commission,
    Wage Order 16 ........................................................................................................3

iv

## I.   <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

After more than two years of hard-fought litigation, involving voluminous documentary discovery, more than twenty depositions, briefing on Plaintiff's motion for class certification and multiple rounds of mediation, Class Counsel successfully resolved Plaintiff's and the Plaintiff Class' California Labor Code claims, securing a $3.45 million, non-reversionary settlement with Defendant Broadspectrum Downstream Services, Inc., formerly Timec Company, Inc. (hereafter, "Defendant" or "Timec").  The settlement will afford substantial and immediate relief to approximately 2,500 current and former, primarily part-time Timec Field Employees, who will receive an average payment of more than $36 per workweek — without even having to file a claim form.

Given their highly successful efforts in achieving this outstanding settlement — particularly in the face of significant litigation risks and uncertainties, discussed further *infra* — Class Counsel respectfully seek an attorneys' fee award of approximately 27 percent of the settlement fund, or $945,677.50, as well as reimbursement of up to $60,000 in costs and expenses reasonably and actually incurred, as authorized under the terms of the Settlement Agreement.

The requested attorneys' fee award is reasonable under both the percentage-of-the-fund method and a lodestar cross-check.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942, 944 (9th Cir. 2011); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The Ninth Circuit has described 25% of the common fund as the "benchmark" for an attorneys' fee award.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *In re Bluetooth*, 654 F.3d at 942.  Many courts within this Circuit have approved attorneys' fee awards of up to one-third of the common fund.  *See, e.g.*, *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming fee award of one-third of settlement).  The reasonableness of the fee request is further underscored by Class Counsel's lodestar, which to date exceeds the amount sought with significant additional work to be performed.  *See* Declaration of John T. Mullan In Support of Plaintiff's Motion for Attorneys' Fees and Expenses ("Mullan Fee Decl.") ¶¶ 42-46.  As detailed in the accompanying declarations of Class Counsel, Class Counsel spent more than 1700 hours litigating this case (not including

1    the additional time they will incur through final approval and distribution of settlement payments

2    to Class Members) without any guarantee of payment, and faced substantial risk that they would

3    not be compensated for their time.  *Id.* ¶ 37.  The hourly rates requested by Class Counsel are

4    consistent with the market rates for attorneys of their level of skill and experience.  *See* Mullan

5    Fee Dec. ¶ 40.  While the complexity and risks of this litigation would justify enhancement of the

6    lodestar by a risk multiplier, *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir.

7    2002), *Class Counsel seek a fee award that is less than their actual lodestar.  See* Mullan Fee

8    Dec. ¶¶ 42-46.  The requested award is thus fair, reasonable, and appropriate under the common

9    fund doctrine, particularly in light of the excellent results achieved and the significant risks

10   presented.

11           Class Counsel are also entitled to recover their reasonable litigation expenses from the

12   common fund.  *See Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  Here,

13   Class Counsel seek reimbursement of up to $60,000 in reasonable litigation costs and expenses

14   they have incurred in connection with the prosecution of this action.  Those costs and expenses

15   include filing fees, mediator fees, expert witness fees, travel, and transcripts.  These expenses are

16   of the type ordinarily billed to paying clients, and were incurred for the benefit of the Class.

17   Class Counsel are therefore entitled to reimbursement of these expenses.

18   **II.      BACKGROUND**

             **A.      Class Counsel Devoted Substantial Time and Resources to Litigating This**
19                    **Case on a Contingency Basis, Despite the Risks Involved.**

20           Class Counsel have devoted substantial time and resources to investigating and litigating

21   this complex case over more than three years, in the face of significant risk and uncertainty.

22           Plaintiff Woodruff and Joseph Vierra initially filed this action on September 10, 2014

23   (Dkt. 1).  They filed a First Amended Complaint on December 2, 2014, alleging exhaustion of the

24   PAGA administrative requirements (Dkt. 22).  On May 3, 2016, Plaintiff Woodruff filed a

25   Second Amended Complaint to (1) remove Mr. Vierra as a named plaintiff because he could not

26   perform that role after a serious automobile accident and (2) to substitute Broadspectrum

27   Downstream Services, Inc. as the Defendant following a name change in the corporate entity (*see*

28   Dkt. 45 and 46).

1       The Second Amended Complaint states claims for failure to pay Class Members for hours

2   worked and overtime hours worked in violation of Labor Code sections 218.6, 1194, 1194.2,

3   1197, and 510, failure to provide accurate wage statements in violation of Labor Code sections

4   226 and 1174, and failure to pay waiting time penalties to Class Members in violation of Labor

5   Code sections 201, 202, and 203.  Plaintiff also sought to recover penalties under PAGA pursuant

6   to Labor Code sections 2698-2699.5.  Plaintiff also alleged that Defendant violated California's

7   unfair competition law, California Business and Professions Code sections 17200, *et seq.*, by

8   failing to pay minimum wage and overtime, failing to pay all wages due upon termination of

9   employment, and failing to provide accurate wage statements in violation of the Labor Code.

10   Plaintiff sought injunctive and declaratory relief; damages, including unpaid wages due for all

11   regular and overtime work required, suffered, or permitted by Defendant; penalties; restitution,

12   including unpaid wages due for all regular and overtime work required, suffered, or permitted by

13   Defendant; pre-judgment and post-judgment interest; and reasonable attorney's fees, costs, and

14   expenses of this action.

15       Timec raised numerous defenses to Plaintiff's off-the-clock claims, including that there is

16   no common policy, practice or procedure to deprive employees of pay for compensable

17   preliminary activities, that overtime claims under California law fail because all class members

18   are governed by a collective bargaining agreement ("CBA") with the International Union of

19   Petroleum Industrial Workers Union, which satisfies the exemption from overtime found in

20   California Labor Code § 514 and California Wage Order 16, and that Plaintiff's claims are

21   preempted under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (Dkt. 9

22   & 78).

23       As noted in the Motion for Preliminary Approval (Dkt. 73), Plaintiff's counsel conducted

24   detailed factual and legal investigations into these claims.  Pursuant to a court-sanctioned *Belaire*

25   opt-out notice process, Plaintiff received a class list consisting of current and former employees

26   (Mullan Fee Dec., ¶ 25).  The Parties exchanged mediation-targeted discovery (*id.*, at ¶ 22).

27   Plaintiff's counsel also conducted an investigation, interviewing approximately 50 putative class

28   members (*id.*, at ¶ 21).  The parties attended a mediation before highly-regarded and experienced

1   mediator Jeffrey Ross in September 2015 (*id.*, at ¶ 28).  Defendant then produced certain policy

2   documents and information regarding a number of Field Employees' electronic gate-read data

3   and shift times (*id.*, at ¶ 30).  The parties participated in a second day of mediation in March

4   2016, which again failed to result in a settlement (*ibid.*).

5       The parties also engaged in extensive formal discovery.  Both parties propounded and

6   responded to document requests and interrogatories (*id.*, ¶ 22).  Plaintiff's counsel took two days

7   of depositions of Defendant pursuant to Rule 30(b)(6) and Defendant deposed Plaintiff Woodruff

8   (*id.*, at ¶ 23).  In connection with briefing on Plaintiff's motion for class certification, Plaintiff's

9   counsel gathered and submitted numerous putative Class Member declarations from Field

10  Employees who have worked at all 14 refineries in California, as well as a declaration from

11  proposed statistical evidence expert, Richard Drogin (*id.*, at ¶ 24).  Defendant also submitted over

12  twenty declarations with its opposition, including refinery workers, supervisors and other

13  personnel, and two experts.  The parties provided document production related to and deposed

14  sixteen of these declarants and deposed all three experts (*id.*).

15      It was only after these extensive investigations, and after Plaintiff's motion for class

16  certification was fully briefed, that the parties reached a settlement in this case (*see* Dkt. 69).  In

17  the weeks prior to reaching a settlement in September 2016, the parties continued to engage in

18  intensive mediation discussions through Mediator Ross (Mullan Fee Dec., ¶ 31).  At the time of

19  the settlement, the parties were fully familiar with the facts and law, and the strengths and

20  weaknesses of the class claims (*id.*, at ¶ 32).  After lengthy negotiations, the parties reached an

21  agreement in principle.  Counsel then spent substantial additional time ironing out the details of

22  the Settlement (*id.*, at ¶ 33).

23      **B.      The Settlement Obtained Is Highly Beneficial to Class Members.**

24      The $3.45 million, non-reversionary settlement is an excellent result for the class,

25  particularly in light of the substantial risks and uncertainties faced by plaintiffs.  Based on the

26  allocation of the settlement fund, at least $2,259,322.50 will be distributed to Class Members

27  who do not timely exclude themselves from the settlement by opting out (or to the California

28  Secretary of State Unclaimed Property Fund and *cy pres* recipient if settlement payments are not

1    cashed).  The average gross (i.e. pre-tax) payment to each Class Member will be approximately

2    $900, or more than $36 per workweek, *after* deducting for the projected attorneys' fees and costs,

3    service payments, and administrative costs.[2]  Under the Settlement, every Class Member who can

4    be located and who does not timely opt out will receive a settlement payment without any claims

5    process, thereby maximizing Class Member participation.  Settlement Agreement, Dkt. 79-1

6    ("Settlement") ¶¶ 48-52.  The Settlement also includes numerous safeguards to ensure that Class

7    Members are found and receive their settlement checks.  Settlement ¶¶ 47-48.

8         These are significant amounts in absolute terms, and they are particularly significant

9    amounts given that the Class Members are relatively low paid part-time workers who worked for

10   Defendant on a temporary basis.[3]  Class Counsel believe that the Settlement provides for a

11   significant portion of the likely recovery were Plaintiffs to fully prevail as a Class at a trial on the

12   merits.  The proposed settlement is over 23% of the amount that Plaintiff's counsel contended

13   was the maximum exposure.  *Id.*

14        Although Plaintiffs believe their claims are strong on the merits, Class Counsel

15   acknowledge that further litigation would have presented significant risks.  At the time the parties

16   reached settlement, pending before the Court was Plaintiff's motion for Rule 23 class

17   certification.  Had Timec defeated Plaintiff's Rule 23 motion for class certification, the

18

19        [2]  Since Class Counsel are only seeking fees in the amount of $945,677.50 instead of the
20   $1,035,000 permitted by the settlement agreement (*see* Settlement ¶ 41) and as estimated in the
     notice (*see* Dkt. 79-1), the amount of the net settlement fund available for distribution to the class
21   will be approximately $89,322 higher than Class Counsel estimated in their motion for
     preliminary approval. Moreover, because there are fewer workweeks than the 69,000 originally
22   estimated, the per workweek recovery of more than $36 is higher than previously estimated.

23        [3]  For illustration purposes, Class Counsel points out that the average per workweek
24   amount of approximately $36 compares very favorably to wage and hour settlements approved
     by the Court in the past.  For example, in *Viceral v. Mistras Group, Inc.*, No. 15-2198 (N.D. Cal.
25   Oct. 11, 2016) (Dkt. 83), the Court granted preliminary approval to a class action settlement for
     alleged off-the-clock uncompensated work and meal-and-rest period violations where the average
26   workweek recovery was $24.05 for a California class and $5.06 for FLSA class members.  In
     comparison, Class Members in this case stand to recover on average an estimated $36 per
27   workweek, calculating the net settlement fund as $2.25 million (including $50,000 to be
     distributed to the Class for PAGA penalties) and estimating 62,458 workweeks.

28

1   approximately 2,500 class members would be denied the opportunity to pursue their claims in

2   this litigation altogether.  Even if Plaintiffs prevailed on the Rule 23 certification motion, Plaintiff

3   and the Class faced the risk that Timec would persuade the Court to grant summary judgment on

4   its preemption affirmative defenses.  Even if Plaintiff and the Class prevailed on all of these

5   motions, they would have had to prove liability and damages at trial, not to mention facing

6   possible motions to decertify the class.  Even if they prevailed at trial, they would have faced

7   continued risk in potentially litigating these issues on appeal.

8           While plaintiffs believe they would have prevailed on class certification and on the merits

9   of their claims, the settlement eliminates any risk that Class Members might not recover any

10  money.  Moreover, the settlement results in substantial payments to the Class Members early in

11  2017, whereas continued litigation could have delayed any potential recovery by several years,

12  even if Plaintiff and the Class had ultimately prevailed.

13  **III.**    **ARGUMENT**

14          **A.**    **The $945,677.50 Class Counsel Seek in Attorneys' Fees is Reasonable Under**
                **Either the Percentage-of-the-Fund Method or the Lodestar Method.**
15

16          Class Counsel seek fees in the amount of $945,677.50, or approximately 27% of the

17  settlement fund.  The amount requested is reasonable under both the percentage-of-the-fund

18  method and a lodestar cross-check.  The percentage Class Counsel seeks is well within the Ninth

19  Circuit's typical range for common fund awards.  *See, e.g., In re Online DVD-Rental*, 779 F.3d at

20  949, 953. Class Counsel's reasonable lodestar (calculated by multiplying Class Counsel's

21  reasonable hours worked times their reasonable rates) will, by the time this matter is concluded,

22  significantly exceed the amount of fees Class Counsel is requesting.

23          **1.**    **Class Counsel Are Entitled to an Award of Attorneys' Fees Because**
                **the Litigation Recovered a Certain and Calculable Fund for the**
24              **Plaintiff Class.**

25          Courts have long recognized that when counsel's efforts result in the creation of a

26  common fund that benefits plaintiffs and unnamed class members, class counsel have an

27  equitable right to be compensated from that fund as a whole.  *See, e.g., Boeing Co. v. Van*

28  *Gemert*, 444 U.S. 472, 478 (1980) (U.S. Supreme Court "has recognized consistently that a

6

1   litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee

2   from the fund as a whole"); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (recognizing

3   common fund doctrine).  The common fund doctrine rests on the understanding that attorneys

4   should normally be paid by their clients, and that unless attorneys' fees are paid out of the

5   common fund, those who benefit from the fund will be unjustly enriched.  *Boeing*, 444 U.S. at

6   478.  To prevent this unfair result, courts exercise their inherent equitable powers to assess

7   attorneys' fees against the entire fund, thereby spreading the cost of those fees among all those

8   who benefit from it.  *Id.*

9        The settlement of this litigation resulted in the recovery of $3.45 million to be distributed

10  to Class Members.  Because none of the Class Members paid fees to Class Counsel for their

11  efforts during the litigation, equity requires them to pay a fair and reasonable fee, based on what

12  the market would traditionally require, no less than if they had hired private counsel to litigate

13  their case individually.  *Id.,* at 478-82.

14        **2.        The Requested Fee Is Reasonable Under the Percentage-of-the-Fund**
              **Method.**
15

16        Where, as here, fees are requested from a common fund, the court has discretion to use

17  either the percentage-of-the-fund method or the lodestar method to evaluate the reasonableness of

18  the fee amount requested.  *In re Bluetooth*, 654 F.3d at 942.  In common fund cases, it is widely

19  accepted for courts to award fees "based on a percentage of the fund bestowed on the class."

20  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see In re Online DVD-Rental*, 779 F.3d at 953

21  (district court appropriately calculated the fee award as a percentage of the total settlement fund,

22  including notice and administrative costs and litigation expenses); *Six (6) Mexican Workers*, 904

23  F.2d at 1311 ("[A] reasonable fee under the common fund doctrine is calculated as a percentage

24  of the recovery."); *State of Fla. V. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a

25  "recent ground swell of support for mandating a percentage-of-the-fund approach in common

26  fund cases").

27        While the Ninth Circuit has described 25% of the common fund as the "benchmark" for

28  an attorneys' fee award (*see, e.g., In re Online DVD-Rental*, 779 F.3d at 949; *In re Bluetooth*, 654

1   F.3d at 942; *Vizcaino*, 290 F.3d at 1047-48), many federal courts within this Circuit have

2   awarded as much as one-third of the common fund in fees.  *See, e.g., In re Pac. Enterprises*, 47

3   F.3d at 378-79 (affirming fee award of one-third of settlement); *Hester v. Vision Airlines, Inc.,*

4   2014 WL 3547643 at *11 (D. Nev. July 17, 2014) (awarding 30% of common fund); *Ching v.*

5   *Siemens Industry, Inc.,* C 11-4838 MEJ, 2014 WL 2926210 at *7-8 (N.D. Cal. June 27, 2014)

6   (awarding 30% of gross settlement fund of $425,000); *Elliott v. Rolling Frito-Lay Sales LP*, 2014

7   WL 2761316 at *8 (C.D. Cal. June 12, 2014) (awarding 30% of gross settlement fund); *Barbosa*

8   *v. Cargill Meat Solutions Corp*., 1:11-CV-00275-SKO, 2013 WL 3340939, at *15 (E.D. Cal. July

9   2, 2013) (awarding 33.3% of fund in wage-and-hour class action); *Estrella v. Freedom Fin.*

10  *Network, LLC,* C09-03156 SI, 2012 WL 4645012, at *3 (N.D. Cal. Oct. 1, 2012) (awarding 33⅓

11  percent of $1.9 million settlement fund); *Stuart v. Radioshack Corp.,* C07-4499 EMC, 2010 WL

12  3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour

13  class action and noting that "[t]his is well within the range of percentages which courts have

14  upheld as reasonable in other class action lawsuits"); *Vasquez v. Coast Valley Roofing, Inc*., 266

15  F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33⅓ percent in wage and hour class action);

16  *Singer v. Becton Dickinson & Co.,* 2010 WL 2196104, at *8-9 (S.D. Cal. June 1, 2010) (awarding

17  33⅓ percent); *In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D.

18  Cal. June 10, 2005) (awarding one-third of common fund); Mullan Fee Dec., ¶¶ 5-19 (describing

19  multiple cases handled by Class Counsel in which courts awarded fees using the common fund

20  method at or above the 25% benchmark).  Indeed, "[n]ationally, the average percentage of the

21  fund award in class actions is approximately one-third."  Multi-Ethnic Immigrant Workers

22  Organizing Network v. City of Los Angeles, No. CV 07-3072 AHM, 2009 WL 9100391, at *4

23  (C.D. Cal. June 24, 2009); see also Newberg on Class Actions, § 15.73, and the cases cited

24  therein: "regardless of whether the percentage method or the lodestar method is used, fee awards

25  in class actions average around one-third of the recovery."  Accordingly, the percentage Class

26  Counsel seeks — approximately 27% — is well within the Ninth Circuit's typical range for

27  common fund awards.

28  *///*

**3.      The Requested Fee Is Reasonable Under a Lodestar Cross-Check.**

**a.      Class Counsel's Lodestar Exceeds the Fee Amount Requested, and Is Based on Reasonable Hours and Rates.**

While courts have discretion in common fund cases to calculate a fee award using either the percentage-of-the-fund approach or the lodestar approach, courts are encouraged to cross-check both figures against one another to confirm the reasonableness of the award. *In re Bluetooth*, 654 F.3d at 942, 944-45; *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.").

Here, a lodestar cross-check confirms that the approximately 27% fee award requested is reasonable. As set forth in the accompanying declaration of John T. Mullan, Class Counsel's lodestar to date exceeds $945,677.50. Accordingly, the requested fees are *lower* than Class Counsel's lodestar, and will be significantly lower once additional time is incurred preparing the motion for final approval of the settlement, and overseeing the settlement administration). Mullan Fee Decl. ¶¶ 42- 46.

The hours and rates used to calculate Class Counsel's lodestar are reasonable. Class Counsel have devoted more than 1700 hours to this litigation. Mullan Fee Decl. ¶¶ 43 & 45. As reflected above and in the accompanying declarations of Class Counsel, this time was spent on numerous essential litigation tasks in prosecuting this action over more than two years, including but not limited to: (1) conducting pre-filing investigation, both legal and factual; (2) case management, including preparing for case management conferences and drafting case management statements; (3) discovery, including interviewing nearly 100 Class Members, propounding and responding to extensive written discovery, including requests for production of documents and interrogatories, deposing two of Defendant's Rule 30(b)(6) witnesses, and reviewing voluminous amounts of documentary and electronic data produced in discovery; (4) preparing a motion for Rule 23 class certification, including preparing for and taking or defending the depositions of the Named Plaintiff and multiple Class Member and witness declarants; (5) preparing for and participating in mediations and subsequent settlement negotiations; (6) drafting and negotiating the Settlement Agreement and preparing the settlement

1 approval papers, including the motion for preliminary approval.  Mullan Fee Decl. ¶¶ 47-48.  In

2 calculating this lodestar hours figure, Class Counsel exercised billing judgment as they would for

3 a fee-paying client, reducing hours to eliminate redundancies, inefficiencies, and other time not

4 appropriately charged to a paying client.  Mullan Fee Decl. ¶ 41; Jambeck Fee Dec. ¶¶10 & 13.

5 Moreover, because the declarations report time before the filing of this motion, they do not

6 reflect additional work Class Counsel will have performed by the time this motion is heard,

7 including briefing the motions for final approval and overseeing the settlement notice process,

8 nor work Class Counsel will undertake on the case to obtain final settlement approval and to

9 ensure that the settlement is fully implemented and any issues that may arise are resolved[4] – all

10 time for which Class Counsel will not seek additional compensation.

11         The rates used in calculating Class Counsel's lodestar are also reasonable.  The lodestar

12 should be calculated using hourly rates that are "the prevailing market rates in the relevant

13 community."  *Blum*, 465 U.S. at 895.  Courts typically apply each attorney's current rates for all

14 hours of work regardless of when performed to account for the delay in payment resulting from

15 the years it took to litigate the case.  *See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) (court

16 should account for delay in payment by applying current rather than historic hourly rates); *Prison*

17 *Legal News v. Schwarzenegger*, 608 F.3d 446, 453-54 (9th Cir. 2010).  Here, Class Counsel's

18 experience, reputation, and ability justify the rates charged.  *See* Mullan Fee Dec. ¶¶ 3-20;

19 Jambeck Fee Dec. ¶¶ 3-6.  Further, these rates are commensurate with those prevailing for

20 attorneys with comparable skill and experience litigating complex wage-and-hour class and

21 collective actions.  Mullan Fee Dec. ¶¶ 39-40; Jambeck Fee Dec., ¶ 14.  These hourly rates, or

22 their historical equivalents, have been paid to Class Counsel by paying clients, and have

23 repeatedly been approved by other courts.  *See* Mullan Fee Dec. ¶¶ 3-20; 40; Jambeck Fee Dec.

24 ¶ 14.

25

26         [4]  Based on Class Counsel's experience in other cases, it is very likely that Class Counsel
will reasonably expend at least another 100 hours on this matter.  Using a blended hourly billing
27 rate of $500, this corresponds to additional lodestar of approximately $50,000.  Mullan Fee Decl.
¶ 46.
28

**b.    The Legal Principles Behind Risk Multipliers Further Support the Reasonableness of the Fee Requested.**

In common fund cases, courts frequently apply multipliers to the lodestar to reflect the risks involved, the complexity of the litigation, and other relevant factors.  *See Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases") (internal quotation marks and citation omitted).  Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases."  *Id.*  For these reasons, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4 or even higher.  *See id.* (approving multiplier of 3.65); *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 298 (N.D. Cal. 1995) (noting that multipliers in the 3-4 range are common in class action lodestar awards); *Craft v. Cnty. of San Bernardino*, 624 F.Supp.2d 1113, 1125 (C.D. Cal. 2008) (awarding multiplier of 5.2 and collecting cases with cross-check multipliers ranging from 4.5 to 19.6).

Though case law suggests that Class Counsel here would be justified in seeking a risk multiplier, the fee amount Class Counsel seek actually reflects a *negative* multiplier.  The fact that Class Counsel seek to recover less than their lodestar further underscores the reasonableness of the requested fee award.

**B.    Class Counsel Are Entitled to Recover Their Reasonable Litigation Costs and Expenses, Which Have Inured to the Benefit of the Class.**

Class Counsel also request reimbursement from the fund in an amount of up to $60,000 for litigation costs and expenses reasonably incurred.  See Settlement ¶¶ 15 & 41.  Like attorneys' fees, these expenses should be paid from the common fund because all Class Members should share their fair share of the costs of the litigation, from which they benefitted.  The expenses for which Class Counsel seek reimbursement are the normal costs of litigation that are traditionally billed to paying clients.  *See, e.g., Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys should recover reasonable out of pocket costs of the type ordinarily billed to paying clients).  Class Counsel have

11

incurred at least $52,474.74 in litigation costs and expenses to date, and will inevitably incur

additional necessary costs through the conclusion of this matter, including costs related to the

motions for final approval, attorneys' fees, and service awards, and overseeing the settlement

administration process.[5]  The expenses to date for which Class Counsel seek reimbursement are

detailed in the supporting declarations of Class Counsel.  Mullan Fee Decl. ¶¶ 49-50; Jambeck

Fee Dec. ¶¶ 12-13.  As set forth therein, all of these costs were necessary to the prosecution of

this litigation, were the sort of expenses normally billed to paying clients, and were made for the

benefit of the class.  Mullan fee Decl. ¶ 49; Jambeck Fee Dec. ¶¶ 12-13.  Accordingly, they are

reimbursable.  *See, e.g., In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177-78 (S.D.

Cal. 2007).

        **C.**       **Class Members Will Have Notice and an Opportunity to Object to Class Counsel's Request for Attorneys' Fees and Costs.**

        The Notice of Settlement will be sent to all Class Members by February 7th and will

describe the terms of the settlement, including the maximum amounts Class Counsel are

authorized to request and receive for attorneys' fee and costs.  Notice of Settlement, Dkt. 79-1.

The Notice of Settlement also refers Class Members to a case website, where this motion and

supporting documents will be posted by the time the Notice is mailed.  *Id.*, Notice at 22.

Pursuant to the terms of the Settlement Agreement, the deadline for objecting to or opting out of

the Settlement is 60 days after the Notice is mailed by the Claims Administrator to the Class

Members.  *See Id.*, Notice at 17 & 22.  Class Members therefore will have ample time before the

objection/opt-out deadline to review this fee and cost request and to lodge any objections or opt

out of the Settlement.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-95 (9th

Cir. 2010).  Class Counsel will address Class Members' response to this request for fees and

costs in their reply brief in support of this motion, and at that time respond to any Class Member

objections, in the event that there are any, to the fee and cost request.

---

[5]  Class Counsel will submit an updated costs amount prior to the Final Approval hearing.
They will seek only their actual expenses incurred as of that time, but in no event will they seek
more than $60,000 in costs reimbursement.

IV.     **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court award Class Counsel $945,677.50 in attorneys' fees and up to $60,000 in costs and expenses from the Settlement Fund.

DATED:  January 9, 2017                          Respectfully submitted,

                                                 RUDY, EXELROD, ZIEFF & LOWE, LLP
                                                 LEIGH LAW GROUP


                                                 By: _____
                                                     JOHN T. MULLAN
                                                     *Attorneys for Plaintiff KEVIN WOODRUFF,*
                                                     *and classes of those similarly situated*

---

13