JOHN T. MULLAN (SBN: 221149)
Email: jtm@rezlaw.com
CHAYA M. MANDELBAUM (SBN: 239084)
Email: cmm@rezlaw.com
MICHELLE G. LEE (SBN: 266167)
Email: mgl@rezlaw.com
ERIN M. PULASKI (SBN: 270998)
Email: emp@rezlaw.com
**RUDY, EXELROD, ZIEFF & LOWE, L.L.P.**
351 California Street, Suite 700
San Francisco, CA  94104
Telephone: (415) 434-9800
Facsimile:  (415) 434-0513

JAY T. JAMBECK (SBN: 226018)
Email: jjambeck@leighlawgroup.com
MANDY G. LEIGH (SBN: 225748)
Email: mleigh@leighlawgroup.com
**LEIGH LAW GROUP**
870 Market Street, Suite 1157
San Francisco, CA  94102
Telephone: (415) 399-9155
Facsimile:  (415) 795-3733

Attorneys for Plaintiff KEVIN WOODRUFF
and class of those similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN WOODRUFF, on behalf of himself and classes of those similarly situated,<br><br>             Plaintiff,<br><br>      vs.<br><br>BROADSPECTRUM DOWNSTREAM SERVICES, INC., formerly TIMEC COMPANY, INC., a corporation,<br><br>             Defendant. | Case No. 3:14-CV-04105-EMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT**<br><br>Date:   May 4, 2017<br>Time:   1:30 p.m.<br>Place:  Courtroom 5, 17th Floor<br>Judge:  Honorable Edward M. Chen<br><br>Third Amended Complaint:  December 16, 2016<br>Trial Date:      None Set |

## NOTICE OF MOTION AND MOTION

TO DEFENDANT BROADSPECTRUM DOWNSTREAM SERVICES, INC., formerly TIMEC COMPANY, INC., AND ITS COUNSEL OF RECORD AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on May 4, 2017, at 1:30 p.m., in Courtroom 5 on the 17th floor of this Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Kevin Woodruff will move and hereby moves the Court for an order granting the following relief:

(1)   Confirming as final the certification of the settlement class under Federal Rule of Civil Procedure 23 (Rule 23);

(2)   Confirming as final the appointment of Plaintiff Kevin Woodruff as the class representative of the class pursuant to Rule 23;

(3)   Approving the Parties' class action settlement as fair, reasonable, and adequate, and binding on all Class Members;

(4)   Directing the Parties and the Settlement Administrator to implement the terms of the Agreement pertaining to the distribution of the Settlement Fund and Net Settlement Fund;

(5)   Making findings of fact and stating conclusions of law in support of the foregoing; and,

(6)   Directing the entry of judgment, as proposed by the Parties and in accordance with the Parties' Agreement, pursuant to Fed. R. Civ. P. 54 and 58.

This Motion is based on the parties' Amended Stipulation of Class Action Settlement and Release (Dkt. No. 79-1), the accompanying Memorandum of Points and Authorities, the Declarations of John T. Mullan, named Plaintiff Kevin Woodruff , and Settlement Administrator Amanda Myette (Senior Project Manager, Rust Consulting), the proposed order and judgment

///

///

///

1   filed herewith, the other records and pleadings filed in this action, and upon such other

2   documentary and oral evidence or argument as may be presented to the Court at the hearing of

3   this Motion.

4

5   DATED:  March 30, 2017                    Respectfully submitted,

6                                            RUDY, EXELROD, ZIEFF & LOWE, LLP

7                                            LEIGH LAW GROUP

8                                       By:  ___/s/ John T. Mullan_____

9                                            JOHN T. MULLAN
                                             *Attorneys for Plaintiff KEVIN WOODRUFF*
10                                           *and class of those similarly situated*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY ....................................................... 3

      A.    Investigation, Negotiations and Settlement ................................................. 3

      B.    The Court Certified Classes for Settlement Purposes and Granted
            Preliminary Approval to the Settlement Agreement ................................. 3

      C.    Settlement Fund ............................................................................................ 4

      D.    Plan of Distribution to Class Members. ...................................................... 5

      E.    Release of Claims ......................................................................................... 6

      F.    Settlement Administration ........................................................................... 7

            1.    Class Notice ........................................................................................ 7

            2.    There Have Been No Opt Outs ........................................................... 7

            3.    Counsel Are Not Aware of any Class Member Objections to the
                  Settlement or any of its Terms. .......................................................... 8

            4.    Challenges to Workweeks Calculated by the Settlement
                  Administrator ...................................................................................... 8

III.  DISCUSSION ........................................................................................................... 8

      A.    Final Confirmation of Class Certification is Appropriate. ...................... 8

      B.    Final Settlement Approval is Appropriate ................................................. 9

            1.    The settlement is entitled to a strong presumption of fairness. ...... 9

            2.    The settlement is fair, reasonable, and adequate. ....................... 10

                  a.    The strength of Plaintiff's case and the risk of maintaining
                        class action status throughout the trial. ............................... 11

                  b.    The risk, expense, complexity, and likely duration of further
                        litigation. ................................................................................. 12

                  c.    Settlement amount. .................................................................. 12

                  d.    Extent of discovery and investigation completed. ................. 14

                  e.    Experience and views of counsel. ........................................... 15

i

f.       Class Members' reactions to the proposed settlement. ................. 15

3.       The Settlement Provides a Substantial Payment to the LWDA in
Consideration for the Settlement of the PAGA Claim. ............................ 16

C.       The Court Should Grant Final Approval to the Payment of a Service
Award to Representative Plaintiff Woodruff. ........................................................ 16

1.       Plaintiff Woodruff Contributed Substantially to this Litigation, to
the Benefit of the Class. ........................................................................... 16

2.       Plaintiff Woodruff Shouldered Unique Risks in His Role as a
Representative Plaintiff. ........................................................................... 18

3.       The Requested Service Award is Reasonable. ......................................... 19

IV.     CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brazil v. Dell Inc.*,
No. C-07-01700 RMW, 2012 WL 1144303 (N.D. Cal. Apr. 4, 2012) ...................................18

*Bredbenner v. Liberty Travel, Inc.*,
No. CIV.A. 09-1248 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)......................................18

*Carlson v. C.H. Robinson Worldwide, Inc.*,
No. 02-CV-3780 JNE, 2006 WL 2671105 (D. Minn. Sept. 18, 2006) ...................................20

*Churchill Vill., L.L.C. v. General Electric*,
361 F.3d 566 (9th Cir. 2004).................................................................................................2

*Connolly v. Weight Watchers N. Am. Inc.*,
No. 14-CV-01983 TEH, 2014 WL 3611143 (N.D. Cal. July 21, 2014) .....................18, 19, 20

*Dent v. ITC Serv. Grp., Inc.*,
No. 12-CV-0009 JCM, 2013 WL 5437331 (D. Nev. Sept. 27, 2013)....................................20

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. 08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................................15, 16, 19

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................................20

*Graham v. Overland Solutions, Inc.*,
No. 10-CV-0672 BEN, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) ..................................19

*Guippone v. BH S&B Holdings, LLC.*,
No. 09-CV-01029 CM, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ...................................19

*In re High-Tech Emp. Litig.*,
11-CV-02509 LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................................18, 19

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012)...................................................................................................5

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998)...............................................................................................14

*Nat'l Rural Telecomm. Cooperative v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................................15

*///*

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. 3:14-CV-04105-EMC

*Officers for Justice v. Civil Serv. Comm'n of the*
   *City and County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................................... 11, 12, 15

*In re Omnivision Tech., Inc.*,
   559 F.Supp.2d 1036 (N.D. Cal. 2008) .............................................................................. 9

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................................... 16, 18

*Ross v. U.S. Bank Nat'l Ass'n*,
   No. C07-02951SI, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) .......................... 18

*Satchell v. Fed. Express Corp.*,
   Nos. C-03-2659 SI, C-03-2878 SI, 2007
   WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................................ 20

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................................ 17

*In re Syncor Erisa Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................................................... 9

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................................................................. 11

*Trew v. Volvo Cars of N. Am., LLC*,
   No. 05-1379, 2007 WL 2239210 (E.D. Cal. Jul. 31, 2007) .................................... 10

*Van Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995) ................................................................................. 20

*Viceral v. Mistras Group, Inc.*,
   No. 15-2198 (N.D. Cal. Oct. 11, 2016) ........................................................................ 13

*Wade v. Kroger Co.*,
   No. 01-CV-699 R, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008) ........................ 20

*Wren v. RGIS Inventory Specialists*,
   No. 06-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................. 10, 15

///

///

///

///

///

iv

**Statutes, Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................3, 4, 8, 9
    Rule 23(a) ...........................................................................................2, 3
    Rule 23(b)(3) .....................................................................................2, 3, 8
    Rule 23(e) ...............................................................................................1
    Rule 23(e)(2) ..........................................................................................9
    Rule 30(b)(6) ........................................................................................14

Federal Insurance Contributions Act (FICA) ........................................................4

The Fair Labor Standards Act (FLSA) of 1938 ...........................................13

The Federal Unemployment Tax Act (FUTA) ........................................................4

California Labor Code
    Section 226(e) ....................................................................................6, 7

Class Action Fairness Act, 28 U.S.C. § 1715 ........................................................4

**Miscellaneous Authorities**

Nantiya Ruan, *Bringing Sense to Incentive Payments:*
    *An Examination of Incentive Payments to Named*
    *Plaintiffs in Employment Discrimination Class Actions,*
    10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ..................................................19

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this class action lawsuit, Plaintiff Kevin Woodruff requests that the Court grant final approval of the Parties'[1] settlement of Plaintiff's claims pleaded in the Third Amended Complaint pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  The settlement, in the amount of $3,450,000, is "fair, reasonable, and adequate" within the meaning of Rule 23(e).  The Class includes 2,588 individuals, comprised of all Field Employees (safety attendants, laborers, and helpers) employed by Defendant on a primarily temporary basis in California at various times between September 10, 2010, and the date of the Court's order preliminarily approving the Settlement, December 19, 2016.[2]  Class Members stand to recover substantial and immediate monetary benefits under the settlement.  As of this date, no Class Member has opted out, such that all Class Members will participate in the settlement.  The class notice directed Class Members to send any objections to the Court.  Class Counsel are not aware of any objections filed by the Court, and neither counsel nor the settlement administrator has received any objections (Declaration of John T. Mullan In Support of Motion for Final Approval ("Mullan Decl."), ¶3; Declaration of Amanda Myette In Support of Motion for Final Approval ("Myette Decl."), ¶12).

The $3.45 million non-reversionary settlement satisfies the Ninth Circuit's standards for approval.  Class Counsel vigorously litigated this case over the course of two years, conducting extensive formal and informal discovery and engaging in active motion practice.  At the time the

---

[1]  All capitalized terms appearing in this memorandum that are not defined herein have the meanings assigned to them in the Amended Stipulation of Class Action Settlement and Release (Dkt. No. 79-1).

[2]  Plaintiff's Motion for Preliminary Approval estimated the class size at approximately 2,000 individuals employed primarily on a temporary basis; however, this number was increased based on Defendant's further review of its employment records in preparing the Class list and employee turnover since the information was provided to Class Counsel prior to filing the motion for preliminary approval.  Notwithstanding this, the number of compensable workweeks at issue — 62,458 — turned out to be fewer than the 69,000 previously estimated (Mullan Decl., ¶6).  Accordingly, the per workweek recovery — more than $36 — is greater than that estimated in the Parties' Joint Response in Support of Plaintiff's Unopposed Motion for Settlement Class Certification and Preliminary Approval of Class Action Settlement, which estimated a per workweek recovery of $31.45. (Dkt. No. 78, p. 3).

1 settlement was reached, the Parties had fully briefed Plaintiff's motion for class certification.

2 Class Counsel were fully informed about the strengths and weaknesses of the claims of Class

3 members at the time the settlement was negotiated.

4        The settlement is in line with the strength of Class Members' claims given the risk,

5 expense, complexity, and likely duration of further litigation, including the risks of establishing

6 liability, proving damages at trial and on appeal, and the risks of securing and maintaining class

7 action status throughout the trial and on appeal. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361

8 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

9 1998)). It is uncertain whether Plaintiff would have ultimately been able to certify and maintain

10 the case as a class action, and to have prevailed on liability for the Class through summary

11 judgment, at trial, and on appeal. Even if Plaintiff did prevail on liability, it is uncertain what

12 amount he would have recovered for the Class. Weighing the risks, time, and expense of

13 continued litigation against the substantial benefits afforded now by the proposed $3.45 million

14 settlement, the proposed settlement is in the best interest of the Class.

15        To date, the response of Class Members to the proposed settlement has been very

16 favorable.[3] To Class Counsel's knowledge, no Class Member has objected to the settlement.

17 None of the 2,588 Class Members have opted out, such that all Class Members to date have

18 decided to participate in the settlement. The lack of any objections and the fact that no Class

19 Member has opted out indicate that the Class has a favorable view of the settlement. This factor

20 too weighs in favor of final settlement approval.

21        In connection with requesting final settlement approval, Plaintiffs also request that the

22 Court: (1) confirm as final the certification of the Class under Fed. Rules Civ. P. 23(a) and

23 23(b)(3); (2) confirm as final the appointment of Plaintiff Woodruff as the class representative of

24 the Class; and (3) enter the proposed final approval order in the form submitted herewith and

25

---

26     [3] The period to submit objections, requests for exclusion, or to contest an individual's
workweek calculation runs until April 7, 2017. Class Counsel will provide an update to the Court
27 regarding any such response received from Class Members with their reply brief, to be filed on
April 13, 2017.

28

1    enter judgment in the form submitted herewith.  Additionally, while the settlement is not

2    contingent upon any service payment, Plaintiff requests the Court award a service payment to

3    compensate Plaintiff for his service to and risks taken on behalf of the Class.

4    **II.      FACTUAL AND PROCEDURAL HISTORY**

5         **A.     Investigation, Negotiations and Settlement**

6              As described more fully in the Memorandum of Points and Authorities in support of

7    Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt.

8    No. 73), the Parties engaged in extensive litigation over the course of two years, including active

9    motion practice and discovery.  Class Counsel conducted a detailed factual investigation of the

10   claims at issue in this case, interviewing approximately 50 putative class members (Declaration

11   of John T. Mullan In Support of Plaintiff's Motion for Preliminary Approval ("Mullan Decl. ISO

12   Preliminary Approval"), Dkt. No. 74, ¶21).  The parties also engaged in extensive formal

13   discovery, including responding to written discovery requests, production of documents, and

14   taking or defending a total of more than 20 depositions (including three expert depositions) in

15   this case (*id.*, at ¶¶22-24).

16             It was only after these extensive investigations, and after Plaintiff's motion for class

17   certification was fully briefed, that the parties reached a settlement in this case (*see* Dkt. No. 69).

18   In the weeks prior to reaching a settlement in September 2016, the parties continued to engage in

19   intensive mediation discussions through experienced employment mediator Jeffrey A. Ross

20   (Mullan Decl. ISO Preliminary Approval, ¶31).  After lengthy negotiations, the parties agreed to

21   the $3.45 million settlement amount.  Counsel then spent substantial additional time ironing out

22   the details of the Settlement (*id.*, at ¶33).

23        **B.     The Court Certified Classes for Settlement Purposes and Granted Preliminary
             Approval to the Settlement Agreement**
24

25             On December 19, 2016, the Court granted Plaintiffs' Preliminary Approval Motion

26   (Order Granting Motion for Preliminary Approval, Dkt. No. 87).  The Court's Order:  (1)

27   determined that the requirements of Rule 23 were satisfied for purposes of certifying the class

28   under Rule 23(a) and Rule 23(b)(3) for settlement; (2) appointed Plaintiff as class representative

1   under Rule 23 and appointed Plaintiff's attorneys as Class Counsel; (3) preliminarily approved

2   the Parties' class action settlement agreement, finding that it was "fair, adequate, and reasonable

3   to the Class" (*id.*, at p.1); (4) ordered that notice of the settlement be directed to the Classes in the

4   form and manner proposed by the Parties; and (5) set May 4, 2017, at 1:30 p.m. as the time for

5   the Fairness Hearing.

6          Notification of the settlement was provided to the appropriate federal and state officials in

7   November 2016 under the Class Action Fairness Act, 28 U.S.C. § 1715, with supplemental

8   notices provided thereafter (Mullan Decl., ¶5).

9   **C.   Settlement Fund**

10          The Amended Stipulation of Class Action Settlement and Release preliminarily approved

11   by the Court, filed as Docket Number 79-1, provides for Defendant to make a non-reversionary

12   settlement payment to the Class of $3,450,000 to compensate Class Members, pay reasonable

13   attorney's fees and costs (up to a maximum of $1,035,000 in fees[4] and up to $60,000 in costs, as

14   determined by the Court), pay a service payment of $10,000 to the class representative if the

15   Court approves the request, pay the costs of the Settlement Administrator (estimated at $25,000),

16   and pay $150,000 to the State of California Labor and Workforce Development Agency (LWDA)

17   (Amended Stipulation of Class Action Settlement and Release, Dkt. No. 79-1, ¶15).  In addition

18   to the $3,450,000 Settlement Fund, Defendant will also pay the employer's share of state and

19   federal payroll taxes (*e.g.*, FICA, FUTA) on all amounts that are paid to Class Members for

20   unpaid wages.

21          Checks will be mailed directly to each Class Member — no further action is required for a

22   Class Member to receive a check.[5]  Class Members have 180 days to cash the settlement checks.

23   After 180 days, if there are uncashed settlement checks or checks mailed to Class Members that

24   _____

25          [4] Plaintiff has moved separately for an award of attorneys' fees and costs, which motion
    will be heard at the Final Fairness Hearing (*see* Dkt. Nos. 88-90).  In Plaintiff's motion for
    attorneys' fees and costs, Plaintiff seeks only $945,677.50 in attorneys' fees (approximately 27%
26   of the settlement fund), which will be considerably less than Class Counsel's lodestar through the
    conclusion of this action.

27          [5] As of this time, since no Class Members have opted out, all Class Members are
    Participating Class Members.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT

are returned as undeliverable and for which no updated address can be located, the funds will be dispersed as follows:  (1) the total amount of wages represented by the uncashed checks will revert to the California Secretary of State Unclaimed Property Fund so that these Class Members may later claim the funds; and (2) the non-wage portion will go to the Court-approved *cy pres*, which the Parties propose should be Legal Aid at Work, formerly known as the Legal Aid Society of San Francisco, Employment Law Center.  There is a substantial nexus between the proposed *cy pres* recipient and the interests of the Class Members in the instant matter.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012), *cert. denied,* 134 S. Ct. 8, 187 L. Ed. 2d 392 (U.S. 2013); *see* Mullan Decl., ¶6).

**D.    Plan of Distribution to Class Members.**

Distributions to Class Members will be made from the remainder of the Settlement Fund after deductions are made for the Settlement Administrator's reasonable costs, court-approved attorney's fees and costs, payment to the LWDA pursuant to PAGA, and any court-approved service payment to the Plaintiff – *i.e.*, the Net Settlement Fund (Amended Stipulation of Class Action Settlement and Release, Dkt. No. 79-1, ¶¶38-39).  The Payout Fund is estimated to be at least $2.25 million (Plaintiff's Motion for Attorneys' Fees and Reimbursement of Costs and Expenses, Dkt. No. 88, p. 5, fn. 3).  Class Members are not required to submit claims or take any other affirmative action to be entitled to their shares of the Net Settlement Fund.

The Agreement sets forth a Plan of Distribution for distributing the Net Settlement Fund among Participating Class Members who do not timely opt out (Amended Stipulation of Class Action Settlement and Release, Dkt. No. 79-1, ¶39).  Specifically, the Net Settlement Fund will be distributed among participating Class Members on a modified *pro rata* basis.  The *pro rata* distribution will be based on a point system to calculate a Class Member's portion of the Net Settlement Fund based on the type of workweek worked (either Turnaround or Maintenance) and whether the Class Member worked during payroll periods ending on or after September 10, 2013.

The Plan of Distribution is intended to more highly compensate Turnaround claims as compared to those related to Maintenance work.  In Class Counsel's judgment, the Turnaround claims have a slightly higher potential value, based on Class Counsel's review and analysis of the

1  relative strengths, risks, and potential recoveries associated with the various claims in the

2  Litigation (*see* Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Dkt.

3  No. 73, pp. 5-6).  Maintenance pay periods are assigned a slightly lower value than turnaround

4  pay periods (0.75 points for each maintenance workweek versus 1 point for each turnaround

5  workweek), because, in Class Counsel's view following extensive discovery, claims premised on

6  maintenance workweeks carry more risk both in terms of the merits of the claims and in terms of

7  their suitability for class treatment.[6]  Additionally, workweeks for payroll periods ending on or

8  after September 10, 2013 are weighted more heavily to account for Labor Code Section 226(e)

9  penalties for pay stub violations (up to a maximum of 39 pay periods), given the one-year statute

10  of limitations period and the statutory cap on such penalties that would generally be reached after

11  39 workweeks (Dkt. No. 73, p. 6).

12      As regards what is otherwise a straight *pro rata* method for distributing the Net

13  Settlement Fund on the basis of the number of qualifying weeks worked by each Participating

14  Class Member, in light of the types of claims and potential recoveries and associated risks at

15  issue, the Plan of Distribution cannot be said to significantly prejudice or favor any segment(s) of

16  the Class relative to any other segment(s) of the Class.

17      **E.    Release of Claims**

18      The release in the Agreement provides that all Class Members who do not opt out will

19  release Defendant from all claims for:

20      [A]ny wage and hour causes of action, claims, damages, benefits, expenses,
        penalties, liabilities, demands, obligations, attorneys' fees, costs, and any other

21      form of relief or remedy in law, equity, of whatever kind or nature, whether
        known or unknown, suspected or unsuspected, that were or could have been

22      brought in this Action, arising out of, relating to, or in connection with any facts
        and/or claims pled in the class action Complaints, without limitation, including all

23      claims for minimum wages, overtime, failure to pay for all work time, travelling to

24      ――――――――――――――
        [6]  As set forth in Plaintiff's Motion for Preliminary Approval of Class Action Settlement

25  (Dkt. No. 73, pp. 5-6) and the accompanying Declaration of John T. Mullan (Dkt. No. 74, ¶37),
    the claims for recovery on maintenance workweeks are somewhat riskier because there is some

26  evidence that maintenance Field Employees could be assigned to work unique jobs within the
    refinery that do not require the same extra-shift procedures as those required of turnaround Field

27  Employees. Additionally, turnaround Field Employees are more likely to have claims for waiting
    time penalties because they worked on temporary projects and were routinely laid off when the
    project was complete.

28

and from the worksite within the facility, undergoing security searches, receiving personal protective equipment ("PPE"), attending safety meetings, returning PPE, and leaving the facility at the end of the shift, being subject to drug or alcohol testing, failure to provide accurate wage statements, failure to provide all wages at time of termination, PAGA penalties, waiting time penalties under Labor Code 201-203, and claims arising out of any other state, federal or local wage and hour laws (provided however, that claims under the FLSA are only released for those Class Members endorsing and cashing their settlement check), and related claims for interest, attorneys' fees and costs, including claims for restitution and other injunctive and/or equitable relief from September 10, 2010, through the date of Preliminary Approval (collectively, the "Released Claims").

(Amended Stipulation of Class Action Settlement and Release, Dkt. No. 79-1, ¶57).

In addition to these releases, the Agreement also provides that Plaintiff Woodruff, should he be awarded a Court-approved service payment, must execute and provide to Defendant an individual general release (*ibid.*).

### F.    Settlement Administration

#### 1.    Class Notice

Pursuant to the Order Granting Motion for Preliminary Approval, on February 6, 2017, the Settlement Administrator mailed the approved Class Notice to putative Class Members identified by Defendant (Myette Decl., ¶¶7-9).  Consistent with the parties' Agreement and the Order Granting Preliminary Approval, the Settlement Administrator searched for more recent addresses, took all reasonable steps to obtain correct addresses for Class Members whose Notices were returned undeliverable, and re-mailed Notices to Class Members for whom new addresses were located (*id.*, at ¶10).[7]  The Settlement Administrator also established a website and toll-free phone number to respond to Class Members' questions regarding the settlement (*id.*, at ¶¶4-5).

#### 2.    There Have Been No Opt Outs.

Class Members who wish to opt out of the Settlement are required to submit a written and signed request for exclusion by the April 7, 2017 deadline specified in the Agreement and provided in the Class Notice (Amended Stipulation of Class Action Settlement and Release, Dkt. No. 79-1, ¶53; Order Granting Motion for Preliminary Approval, Dkt. No. 87, p. 3).  A request

---

[7]  Specifically, after performing address traces on Class Notices that were initially returned as undeliverable, the Settlement Administrator re-mailed 196 notices to an updated traced address.  As of March 20, 2017, 64 Class Notices were undeliverable (Myette Decl., ¶10).

1  for exclusion will be timely if it is mailed to the Settlement Administrator and postmarked by

2  April 7, 2017 (*see* Order Granting Motion for Preliminary Approval, Dkt. No. 87, p. 3; Myette

3  Decl., ¶9).

4       As of March 20, 2017, the Settlement Administrator has received no requests for

5  exclusion (Myette Decl., ¶11).  Accordingly, out of a Class of 2,588 members, no Class Member

6  has excluded him or herself from the settlement.

7       **3.**    **Counsel Are Not Aware of any Class Member Objections to the Settlement or any of its Terms.**

8       Class Members who do not opt out and who wish to object to the Settlement can do so by

9  submitting written objections to the Court by April 7, 2017, the deadline specified in the parties'

10  Agreement, the Court's Preliminary Approval Order, and provided in the Class Notice (Order

11  Granting Motion for Preliminary Approval, Dkt. No. 87, p. 3; Myette Decl., ¶9).

12       Class Counsel are not aware of any objections sent to and filed by the Court (Mullan

13  Decl., ¶3).  Class Counsel has not received any objections from any Class Member, whether

14  formal or informal (*ibid*.).  Additionally, as of March 20th, no Class Member has submitted any

15  objection to the Settlement Administrator (Myette Decl., ¶12).

16       **4.**    **Challenges to Workweeks Calculated by the Settlement Administrator.**

17       Class Members were given the opportunity to challenge the number of applicable

18  workweeks printed in their Notice by submitting a written letter postmarked by April 7, 2017.

19  The Settlement Administrator has to date received no such challenges to the number of

20  workweeks printed in the Class Members' Notices (Myette Decl., ¶13).

21  **III.**    **DISCUSSION**

22       **A.**    **Final Confirmation of Class Certification is Appropriate.**

23       The Order Granting Motion for Preliminary Approval certified the Class for settlement

24  purposes under Rule 23 of the Federal Rules of Civil Procedure, appointed Plaintiff Woodruff as

25  the representative for the Class, and appointed Plaintiff's attorneys as Class Counsel (Dkt.

26  No. 87).  The Court found, for purposes of settlement, that the Class meets all of the requirement

27  for maintenance of a class action under Rule 23(a) and Rule 23(b)(3) (*ibid.*).

28  ///

Notice of the class action was directed to all Class Members in a form and manner that complied with Rule 23 (*see supra* § II.F.1).  As of today's date, Class Counsel are not aware of any objections by a Class Member to any aspect of the Court's order preliminarily approving the settlement and none of the 2,588 Class Members opted out.

For these reasons, and for the reasons set forth in Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 73) and the Parties' Joint Response in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 78), the Court should confirm the certification of this action as a settlement class action and the appointment of Plaintiff as the Class Representative.

**B.    Final Settlement Approval is Appropriate.**

In order to approve a settlement that would bind class members, the court must find, after notice and a hearing, that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor Erisa Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  "Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits." *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1041 (N.D. Cal. 2008) (Conti, J.).  While "[t]he court must find that the proposed settlement is fundamentally fair, adequate, and reasonable" (*id.*, at 1040), "the court's inquiry is ultimately limited 'to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.' . . .  The court, in evaluating the agreement of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact." *Ibid.*  (citation omitted; quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

**1.    The settlement is entitled to a strong presumption of fairness.**

"When seeking final approval, plaintiffs may establish a presumption of fairness by demonstrating: '(1) [t]hat the settlement has been arrived at [through] arm's-length bargaining;

9

1  (2) [t]hat sufficient discovery has been taken or investigation completed to enable counsel and the

2  court to act intelligently; (3) [t]hat the proponents of the settlement are counsel experienced in

3  similar litigation; and (4) [t]hat the number of objectors or interests they represent is not large

4  when compared to the class as a whole." *Trew v. Volvo Cars of N. Am., LLC*, No. 05-1379, 2007

5  WL 2239210, *2 (E.D. Cal. Jul. 31, 2007) (quoting Alba Conte and Herbert B. Newberg,

6  Newberg on Class Actions § 11:41 (2006)); *see Wren v. RGIS Inventory Specialists*, No. 06-

7  05778, 2011 WL 1230826, *6 (N.D. Cal. Apr. 1, 2011) (Spero, M.J.) (initial presumption of

8  fairness is usually established if settlement is recommended by class counsel after arm's-length

9  bargaining).

10         In this case, as discussed more extensively in Plaintiff's Motion for Preliminary Approval

11  of Class Action Settlement (Dkt. No. 73, pp. 11, 17-18) and in Plaintiff's Motion for Attorneys'

12  Fees (Dkt. No. 88): (1) Class Counsel are highly experienced in class action wage and hour

13  litigation; (2) Plaintiff (and Defendant) conducted extensive discovery, investigation, and motion

14  practice that allowed Class Counsel to act intelligently in negotiating and recommending the

15  settlement; and, (3) the Parties arrived at the settlement through arms-length bargaining involving

16  competent and experienced counsel.  In addition, as of this time, there are no objectors to the

17  settlement (Mullan Decl., ¶3; Myette Decl., ¶12).

18         For these reasons, there is a strong presumption that the proposed settlement is fair to the

19  Class.  *Trew*, 2007 WL 2239210 at *2; *see Wren*, 2011 WL 1230826 at *6.

20               **2.      The settlement is fair, reasonable, and adequate.**

21         The Ninth Circuit has identified several factors the district court should consider, as

22  applicable, in reaching its determination of whether a proposed class action settlement is fair,

23  reasonable, and adequate.

24         The district court's ultimate determination will necessarily involve a balancing of
       several factors which may include, among others, some or all of the following: the

25       strength of plaintiffs' case; the risk, expense, complexity, and likely duration of
       further litigation; the risk of maintaining class action status throughout the trial;

26       the amount offered in settlement; the extent of discovery completed, and the stage
       of the proceedings; the experience and views of counsel; the presence of a

27       governmental participant; and the reaction of the class members to the proposed
       settlement.

28

10

1    *Officers for Justice*, 688 F.2d at 625.  "This list is not exclusive and different factors may

2    predominate in different factual contexts."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376

3    (9th Cir. 1993).

4         All the relevant factors identified by the Ninth Circuit weigh in favor of settlement

5    approval in this case.

6              **a.    The strength of Plaintiff's case and the risk of maintaining class action status throughout the trial.**

7         Plaintiff is convinced of the strengths of his claims.  However, Defendant is equally

8    adamant about the strength of its defenses.  As is clear from the motion practice in this case,

9    including the hotly contested motion for class certification that was fully briefed and set for

10   hearing before the settlement agreement was reached, Plaintiff's claims and Defendant's defenses

11   give rise to a number of critical, disputed factual and legal issues that go to the core of Plaintiff's

12   claims and theories of liability and, by extension, to Plaintiff's entitlement to recover damages

13   and penalties, and/or the proper measure of damages.

14        As is set forth in greater detail in the Declaration of John Mullan In Support of Plaintiff's

15   Motion for Preliminary Approval, Dkt. No. 74, pages 12-15, Plaintiff would have to prevail over

16   Defendant's arguments that requiring Class Members to arrive at work prior to the start of their

17   compensable shifts to don required safety gear, obtain tools, attend safety meetings, congregate at

18   designated places, and be transported to their intra-refinery work locations does not constitute

19   compensable work under the California Labor Code.  Plaintiff would also have to overcome

20   Defendant's arguments regarding exemption for certain unionized employees and various

21   preemption arguments.  Additionally, there was risk as to Plaintiff's claims for wage statement

22   violations and waiting time penalties, which require a finding that Defendant's failures to comply

23   with the Labor Code were "knowing and intentional" or "willful", respectively.  While Plaintiff

24   believes his arguments, as set forth in part in his opposition to Defendant's motion for class

25   certification, are very strong and should have been successful, Plaintiff was not guaranteed to prevail.

26        Plaintiff also faced significant risks in obtaining class certification.  Plaintiff had filed a

27   motion for class certification, which Defendant opposed with hundreds of pages of argument and

28   evidence (Dkt. Nos. 56-57).  The motion presented substantial legal and factual uncertainty

1    regarding whether Plaintiff's case could proceed as a class action.

2         The risks and uncertainties facing the claims of Plaintiff and the Class weigh in favor of

3    settlement approval.

4                       **b.    The risk, expense, complexity, and likely duration of further**
                               **litigation.**
5

6         Whatever the strength of his claims, Plaintiff nonetheless faced numerous obstacles to

7    recovery, including likely challenges to the use of representative testimony and expert witnesses

8    to establish class wide liability and aggregate damages, challenges to Class Members' testimony

9    concerning how much uncompensated time they worked, challenges to Plaintiff's methodology

10   for calculating damages and penalties, and having to defend against Defendant's preemption and

11   exemption defenses.

12        The litigation regarding class certification had been, and would continue to have been,

13   expensive and time consuming.  Assuming the Court certified a class action for trial, Defendant

14   could have appealed from a class certification order, which might have delayed the proceedings

15   considerably and been very expensive.

16        Additionally, if this case had proceeded to trial, the time and expenses associated with

17   trial preparation would have been considerable.  The parties would have had to prepare expert

18   reports and conduct expert discovery, prepare and defend against motions *in limine*, draft trial

19   briefs, prepare deposition designations and trial exhibits, and, ultimately, try the case.  A class

20   action trial in this case would be manageable, but it would also be complex, expensive, and

21   extremely time-consuming.  Even if Plaintiff obtained a favorable verdict and judgment on his

22   claims, Plaintiff and the Class would face additional expenses and delay if, as is likely, Defendant

23   were to appeal.

24        Taken together, these considerations support approval of the settlement.

25                       **c.    Settlement amount.**

26        In determining whether a settlement is fair, reasonable, and adequate, the court must

27   consider the amount offered in settlement.  *Officers for Justice*, 688 F.2d at 625.  Under the terms

28   of the Agreement, Defendant is required to make a total settlement payment of $3,450,000.  That

1   amount is non-reversionary.  The settlement amount compares favorably with wage-and-hour

2   settlements approved by the Court in the past.  For example, in *Viceral v. Mistras Group, Inc.*,

3   No. 15-2198 (N.D. Cal. Oct. 11, 2016) (Dkt. No. 83), the Court granted preliminary approval to a

4   class action settlement for alleged off-the-clock uncompensated work and meal-and-rest period

5   violations where the average workweek recovery was $24.05 for a California class and $5.06 for

6   FLSA class members.  In comparison, Class Members in this case stand to recover an estimated

7   $36 per workweek (*see* Plaintiff's Motion for Attorneys' Fees and Costs, Dkt. No. 88, p. 5).

8   Additionally, the average gross settlement amount of approximately $900 for each of the

9   temporary employee Class Members compares favorably to that approved in *Strickland*, a wage-

10  and-hour case against Defendant Timec that involved additional claims for meal and rest breaks

11  not at issue here.  In *Strickland*, the average estimated settlement was $696 (*see* Mullan Decl.

12  ISO Preliminary Approval, ¶40 and Ex. 3).

13      The settlement figures are significant amounts in absolute terms, and they are also

14  significant amounts when viewed in the context of the case, where the Class Members are

15  relatively low-paid, primarily part-time workers (Mullan Decl. ISO Preliminary Approval, ¶43).

16      Defendant will pay the entire $3,450,000 settlement amount, plus applicable payroll taxes

17  on amounts designated as wages.  Class Members are not required to submit claims or take any

18  other action to receive their settlement shares, which should result in a much higher percentage of

19  the Class receiving money under the Settlement than would be the case if some affirmative action

20  were required.  After 180 days, if any Class Member checks are not cashed, the total amount of

21  wages represented by the uncashed checks will revert to the California Secretary of State

22  Unclaimed Property Fund so that these Class Members may later claim the funds.  The non-wage

23  portion will go to the Court-approved *cy pres*, which Plaintiff proposes should be Legal Aid at

24  Work, formerly the Legal Aid Society of San Francisco–Employment Law Center (Amended

25  Stipulation of Class Action Settlement and Release, Dkt. No. 79-1, at ¶40).[8]

26  _____

27      [8]  The Settlement Administrator will mail a reminder postcard for Class Members who
    have not cashed their checks after ninety (90) calendar days of mailing (Amended Stipulation of
28  Class Action Settlement and Release, 79-1, ¶52).

1     These amounts are particularly meaningful when one considers the serious risks and

2 uncertainties Plaintiff and the Class faced in the litigation with regard to class certification,

3 whether Defendant will succeed on its defenses under the Labor Code, and whether Plaintiff will

4 succeed in proving liability for damages and penalties, as well as the amounts of damages and

5 penalties they might recover in the event that liability were to be established.  Simply put, this is

6 a case involving many difficult claims and risks.

7     Considering the risks and uncertainties in the litigation, including the risks that class

8 certification might be denied, the risks of losing some or all claims on the merits, the risks of

9 otherwise not recovering all the monetary relief sought, and the certain delay in any recovery by

10 not settling, the $3,450,000 Settlement Fund payment provided for by the Settlement represents

11 very good value for the Class and weighs strongly in favor of final settlement approval.

12         **d.**      **Extent of discovery and investigation completed.**

13     This factor examines the extent of discovery the parties have completed and the current

14 stage of the litigation to evaluate whether "the parties have sufficient information to make an

15 informed decision about settlement." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234,

16 1239 (9th Cir. 1998).

17     As detailed in Plaintiff's Motion for Preliminary Approval and in the accompanying

18 Declaration of John T. Mullan (Dkt. Nos. 73 and 74), Plaintiff (and Defendant) has conducted

19 extensive discovery and investigation.  Discovery and investigation have included, but not been

20 limited to, the following: interviews with the class representatives and approximately 50 Class

21 Members, requests for production of documents and review of the over 8,000 pages of documents

22 produced by Defendant, and propounding and responding to written discovery, including

23 interrogatories (Mullan Decl. ISO Preliminary Approval (Dkt. No. 74), ¶¶21-22).  Plaintiff took

24 depositions of two of Timec's corporate designees pursuant to Rule 30(b)(6), defended the

25 depositions of Plaintiff and six putative class members, took the deposition of ten of Defendant's

26 witnesses, and took and defended expert witness depositions (*id*., at ¶¶23-24).

27     Given the substantial scope and amount of discovery and investigation completed,

28 Plaintiff had more than sufficient information to make an informed decision about settlement.

1  This factor weighs heavily in favor of final settlement approval.

2          **e.  Experience and views of counsel.**

3    As detailed in Plaintiff's Motion for Attorneys' Fees and Costs, and in the accompanying

4  attorney declarations, Class Counsel have had extensive experience and success litigating, trying,

5  and settling wage and hour class actions (Motion for Attorneys' Fees and Costs, Dkt. No. 88,

6  p. 10; Declaration of John T. Mullan, Dkt. No. 89, ¶¶3-20; Declaration of Jay Jambeck, Dkt.

7  No. 90, ¶¶3-6).  Class Counsel are very knowledgeable about the strengths, weaknesses and

8  potential value of the Class's claims (Mullan Decl. ISO Preliminary Approval, Dkt. No. 74,

9  pp. 12-15.)  Class Counsel believe that the amount of the settlement is "fair, reasonable, and

10 adequate," and that "[c]onsidering the risks of continued litigation . . . , this settlement is within

11 the range of reasonableness and fair to the Class" (*id*., at ¶46).  Class Counsel's experience and

12 view of the settlement are factors weighing in support of final settlement approval.  *See, e.g.*,

13 *Wren*, 2011 WL 1230826 at *10.

14         **f.  Class Members' reactions to the proposed settlement.**

15   Out of approximately 2,588 Class Members, to date no Class Member has submitted any

16 objections and no Class Member has opted out.  Additionally, no Class Member has submitted a

17 challenge to the Settlement Administrator or to Class Counsel regarding his or her individual

18 determination of workweeks worked during the class period.  The absence of objections and opt

19 outs is a strong indication that the Class has a favorable view of the settlement.  This factor too

20 weighs in favor of final settlement approval.  *Officers for Justice*, 688 F.2d at 625; *Nat'l Rural*

21 *Telecomm. Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence

22 of a large number of objections to a proposed class action settlement raises a strong presumption

23 that the terms of a proposed class action settlement are favorable to the class members"); *see also*

24 *Garner v. State Farm Mut. Auto. Ins. Co.,* No. 08-1365, 2010 WL 1687832, at * 14 (N.D. Cal.

25 Apr. 22, 2010) (Wilken, J.) (citing *Nat'l Rural Telecomm. Cooperative*).

26   To conclude, the proposed settlement is presumptively fair, and all the relevant factors set

27 forth by the Ninth Circuit for considering whether to approve a class action settlement weigh in

28 favor of granting final approval to the proposed settlement in this case.  Therefore, the Court

1   should grant final approval to the settlement.

2   **3.      The Settlement Provides a Substantial Payment to the LWDA in Consideration for the Settlement of the PAGA Claim.**

3

4   As set forth at length in Plaintiff's Motion for Preliminary Approval (Dkt. No. 73, pp. 20–

5   22), the allocation of $200,000 to the PAGA claim is appropriate where (1) the Settlement

6   provides substantial relief to Class Members through a significant settlement payment from

7   Defendant, promoting PAGA's principles in protecting employee rights and (2) the allocation to

8   the PAGA award represents substantial relief to the Class given the risks of pursuing a jury

9   verdict.

10  Additionally, the Labor and Workforce Development Agency, the agency tasked with

11  administering PAGA, was provided notice of the Settlement and has not objected or responded to

12  the Settlement (Mullan Decl., ¶4).

13  **C.      The Court Should Grant Final Approval to the Payment of a Service Award to Representative Plaintiff Woodruff.**

14

15  As contemplated by the Parties' Agreement (Dkt. No. 79-1, ¶15), the Representative

16  Plaintiff, Kevin Woodruff, hereby applies for the award of a service payment of $10,000 to be

17  paid from the Settlement Fund for his time, efforts, and sacrifices on behalf of the Class.  Class

18  Members received notice of the request for a service award and no Class Members has objected.

19  The Court should now approve the requested service award for Plaintiff Woodruff.

20  **1.      Plaintiff Woodruff Contributed Substantially to this Litigation, to the Benefit of the Class.**

21  Class representatives play a crucial role in bringing justice to those who would otherwise

22  be unable to vindicate their rights.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–

23  59 (9th Cir. 2009) (incentive awards may recognize a plaintiff's "willingness to act as a private

24  attorney general").  In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action

25  cases." *Id*., at 958.  "Numerous courts in the Ninth Circuit and elsewhere have approved

26  incentive awards of $20,000 or more where . . . the class representative has demonstrated a strong

27  commitment to the class." *Garner v. State Farm Mut. Auto Ins*., No. 08-CV-1365 CW, 2010 WL

28  1687832, at *17, n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases); *see also* Mullan Dec in Support

16

1    of Motion for Attorneys' Fees and cases cited therein, ¶¶5-16 (Dkt. No. 89).  In examining this

2    commitment to the class and the reasonableness of a requested service payment, courts must

3    consider all "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests

4    of the class, the degree to which the class has benefitted from those actions, . . . the amount of

5    time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of]

6    workplace retaliation."  *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003) (citation

7    omitted).  Additionally, to ensure that an incentive payment is not excessive, the court should

8    balance "the number of named plaintiffs receiving incentive payments, the proportion of the

9    payments relative to the settlement amount, and the size of each payment."  *Ibid*.

10          Here, Plaintiff Woodruff's services protected the interests of the Class and resulted in a

11   benefit to the Class as a whole.  Mr. Woodruff expended substantial time and effort in the

12   prosecution and settlement of this case.  He estimates that he spent approximately 29-30 hours

13   working on the case (Declaration of Kevin Woodruff ("Woodruff Decl."), ¶¶4-10).  In the course

14   of his service as a representative plaintiff in this case, Mr. Woodruff:  (1) communicated

15   extensively with Class Counsel regarding facts, issues, documents, scheduling, and potential

16   witnesses in the case; (2) traveled significant distances to attend his deposition; (3) prepared and

17   sat for a full-day deposition and reviewed his deposition transcript for errors; (4) worked with

18   Class Counsel to respond to requests for production of documents and searched for and provided

19   documents to Class Counsel; (5) worked extensively with Class Counsel to respond to

20   Defendant's interrogatories; (6) worked with Class Counsel to prepare draft declarations to be

21   filed in support of class certification; and (7) made himself available by telephone during the

22   mediation (Woodruff Decl., ¶¶5-10).

23          Moreover, the number of hours that Plaintiff expended fails to capture the value added to

24   this case by his efforts.  Plaintiff provided Class Counsel with information about and documents

25   confirming his working conditions and compensation received that were essential to framing the

26   claims in Plaintiff's multiple Complaints and in prosecuting the case (Mullan Decl., ¶7).

27   ///

28   ///

17

1

### 2.   Plaintiff Woodruff Shouldered Unique Risks in His Role as a Representative Plaintiff.

2    Service awards are particularly appropriate in wage-and-hour actions where plaintiffs

3 undertake a significant "reputational risk" by bringing suit against their former employers.

4 *Rodriguez,* 563 F.3d at 958-59; *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2012 WL 1144303, at *2-

5 3 (N.D. Cal. Apr. 4, 2012).  In the workplace context, where workers are often blacklisted if they are

6 considered "trouble makers," employees who sue their employers are particularly vulnerable to

7 retaliation and termination—a paralyzing fear for workers in this harsh economic climate.  *See In re*

8 *High-Tech Emp. Litig.*, 11-CV-02509 LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015)

9 (granting service awards based in part on the named plaintiffs' risk of future workplace retaliation

10 and diminished future employment prospects for being labeled "troublemakers" in their industry);

11 *Connolly v. Weight Watchers N. Am. Inc.*, No. 14-CV-01983 TEH, 2014 WL 3611143, at *4 (N.D.

12 Cal. July 21, 2014) (named plaintiffs assume "the risk of being stigmatized or disfavored by their

13 current or potential future employers by suing their employer"); *Bredbenner v. Liberty Travel, Inc.,*

14 No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *23 (D.N.J. Apr. 8, 2011) (awarding enhancements

15 to named plaintiffs in recognition that "they risk their good will and job security in the industry for

16 the benefit of the class as a whole"); *Ross v. U.S. Bank Nat'l Ass'n*, No. C07-02951SI, 2010 WL

17 3833922, at *2 (N.D. Cal. Sept. 29, 2010) (enhancements based on "willingness to serve as

18 representatives despite the potential stigma that might attach to them in the banking industry from

19 taking on those roles").

20    Here, Plaintiff undertook significant risks in coming forward and being the named

21 representative in a suit against his employer.  Plaintiff had to overcome his fear of retaliation and

22 industry ostracization to serve as a named plaintiff in this lawsuit.  Plaintiff's employment situation

23 was particularly risky for Plaintiff, as he was employed by Defendant as a temporary worker, subject

24 to layoff and rehiring as the company's needs required.  He was employed by Defendant at various

25 times from on or about January 2014 through the present time.  Accordingly, he was highly

26 concerned about and susceptible to potential retaliation, including through not being called back to be

27 rehired (Woodruff Decl., ¶11).  Additionally, Plaintiff documents the fear that he continues to have

28 regarding future negative impacts on his employment if a potential future employer discovers (from a

18

1  simple internet search) that he initiated a class action lawsuit against his employer. *See* Woodruff

2  Decl., ¶12; *Guippone v. BH S&B Holdings, LLC.*, No. 09-CV-01029 CM, 2011 WL 5148650, at *7

3  (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on

4  the internet and may become known to prospective employers when evaluating that person.");

5  *Connolly*, 2014 WL 3611143, at *4 (recognizing named plaintiffs assume "the risk of being

6  stigmatized or disfavored by their current or potential future employers by suing their employer").

7       Although Plaintiff could likely have confidentially resolved his individual claim, he was

8  willing to risk exposure and act as a named plaintiff to secure a remedy not only for himself, but for

9  his fellow workers who might be unwilling, afraid, or unable to bring their own case (Woodruff

10  Decl., ¶14). *See* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive

11  Payments to Named Plaintiffs in Employment Discrimination Class Actions,* 10 Emp. Rts. & Emp.

12  Pol'y J. 395 (2006) (discussing the realistic fear of reprisal facing employees who bring workplace

13  law class actions). The risk of retaliation and deterred future employment weighs in favor of the

14  requested service award.

15       **3.      The Requested Service Award is Reasonable.**

16       The amount of the requested service award is reasonable. The $10,000 amount

17  constitutes a very small fraction of the Settlement Fund, resulting in little detriment to the Class.

18  The award is reasonable in this case in view of the extent of the time and effort expended by the

19  named Plaintiff and is in line with awards approved in other cases. *See, e.g.*, *In re High-Tech

20  Emp. Litig.*, 2015 WL 5158730 at *16-18 (granting service awards of $120,000 for one named

21  plaintiff and $80,000 for four other named plaintiffs in antitrust action based on their "hundreds"

22  of hours worked in furtherance of the litigation and reasonable fear of future workplace

23  retaliation, where class members were expected to receive roughly $5,770 each); *Garner,* 2010

24  WL 1687832, at *17 n.8 ("Numerous courts in the Ninth Circuit and elsewhere have approved

25  incentive awards of $20,000 or more") (collecting cases); *Graham v. Overland Solutions, Inc*.,

26  No. 10-CV-0672 BEN, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (awarding $25,000 to

27  each named plaintiff "for their time, effort, risks undertaken for the payment of costs in the event

28  this action had been unsuccessful, stigma upon future employment opportunities for having

1   initiated an action against a former employer, and a general release of all claims related to their

2   employment"); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16-

3   17 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (approving payments of

4   $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299-

5   300 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff); *Satchell v. Fed. Express Corp.*, Nos.

6   C-03-2659 SI, C-03-2878 SI, 2007 WL 1114010, at *5-6 (N.D. Cal. Apr. 13, 2007) (preliminarily

7   approving awards of up to $30,000 each to class representatives and up to $5,000 each to 18 class

8   members who signed declarations and were deposed); *see also* Mullan Preliminary Approval

9   Decl. ¶¶5-18.  For example, in *Connolly v. Weight Watchers North America, Inc*., No. 14-cv-

10  01983-TEH (N.D. Cal. 2014) (Henderson, J.), Class Counsel firm Rudy, Exelrod, Zieff, & Lowe,

11  LLP, represented employees in a wage-and-hour class action alleging, *inter alia*, unpaid off-the-

12  clock work and unreimbursed business expenses.  This Court granted final approval to the

13  plaintiffs' proposed class action settlement and approved service payments of $12,500 and

14  $10,000 to the two class representatives (Mullan Preliminary Approval Decl. ¶18).

15          In addition, Plaintiff agreed to execute a much broader release than the releases that apply to

16  other class members.  This warrants additional compensation.  *Dent v. ITC Serv. Grp., Inc.*, No. 12-

17  CV-0009 JCM, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding enhancement in part

18  because wage plaintiff signed a general release); *Wade v. Kroger Co.*, No. 01-CV-699 R, 2008 WL

19  4999171, at *13 (W.D. Ky. Nov. 20, 2008) (awarding plaintiffs additional compensation because they

20  agreed to a "release of all claims . . . that is broader than the release given by other members of this

21  class"); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-CV-3780 JNE, 2006 WL 2671105, at *4

22  (D. Minn. Sept. 18, 2006) (authorizing additional payments to plaintiffs who "g[a]ve additional

23  consideration-that is, a broader release of claims than the release to be signed by other class

24  members").

25  ///

26  ///

27  ///

28  ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. 3:14-CV-04105-EMC

1    **IV.    <u>CONCLUSION</u>**

2              For the foregoing reasons, Plaintiff respectfully submits that the Court should grant his

3    Motion for Final Approval and for Entry of Judgment, enter the proposed order that has been

4    agreed to by the Parties and submitted to the Court, and enter judgment.

5

6    DATED:  March 30, 2017                        Respectfully submitted,

7                                                  RUDY, EXELROD, ZIEFF & LOWE, LLP

8                                                  LEIGH LAW GROUP

9                                                  By:   _/s/ John T. Mullan_____

10                                                       JOHN T. MULLAN
                                                        *Attorneys for Plaintiff KEVIN WOODRUFF*
11                                                      *and class of those similarly situated*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28